Livingston vs Scully.

---

### No. 180.

### P. C. LIVINGSTON VS. P. SCULLY.

1. An action for damages resulting from the *passive* violation of a commutative contract, or one containing mutual stipulations and covenants between the parties, must be preceded by putting the obligor *in mora*, as a condition thereto.

2. The want or failure of the plaintiff to put him *in mora* does not oblige defendant to except or specially deny that fact. It is the duty of the plaintiff to allege and prove it, else he cannot recover.

APPEAL from the First District Court, Parish of Caddo. *Hicks*, J.

---

*Young & Thatcher* for Plaintiff and Appellee:

Although the contract be either not commutative, or, if commutative, the reciprocal obligations are not to be performed at the same time. yet the party wishing to put the other in default must be himself ready, and must offer to receive the performance at the time and place stipulated in the contract, or implied from the nature of the act to be done, etc. C. C. 1914, 1913.

In a case coming under either of the two above articles of the Civil Code, a demand on the debtor, in order to put him in delay, requires no particular form; it is sufficient if the rule be substantially complied with. 3 L. 382; 11 L. 240; 8 R. 160; 19 Ann. 85; 28 Ann. 778; 23 Ann. 107; 6 N. S. 230.

A contract may be violated actively by doing inconsistent with the obligation it has proposed. Where there is an active violation of the contract, damages are due from the moment the act of contravention has been done, and the creditor is under no obligation to put the debtor in default in order to entitle him to his action. C. C. 1931, 1932.

When an obligation has been contracted on condition that an event shall happen within a limited time, the condition is considered as broken, when the time has expired without the event taking place. If there be no time fixed, the condition may always be performed. and it is not considered as broken until it is become certain the event will not happen. C. C. 2038; 1. Ann. 424.

The condition is considered as accomplished when the accomplishment of it has been prevented by the party bound to perform it. 1 Ann. 424.

If the work be composed of detached pieces, or made at the rate of so much a measure, the

parts may be delivered separately; and that delivery shall be presumed to have taken place, if the proprietor has paid to the undertaker the price due for the parts of the work which have already been completed. C. C. 2761.

Where the object of the contract is anything but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived. C. C. 1934; 5 Ann. 221; 2 L. 332.

*Alexander & Blanchard* and *J. H. Shepherd* for Defendant and Appellant:

1. As a condition precedent to the recovery or damages for the passive violation of a commutative contract, the obligor must be put *in mora*, and this putting in default must be alleged and proved. C. C. 1911, 1912, 1913; 18 L. 88; 2. R. 498; 3 R. 400; 6 R. 450; 9 R. 495; 10 R. 524; 11 Ann. 300; 17 Ann. 33; 19 Ann. 130; 23 Ann. 513; 27 Ann. 176; 30 Ann. 1125; 37 Ann. 659, 835.

2. Articles 1912 and 1913 of the Civil Code specially provide that in order to recover damages for the passive violation of a commutative contract, the obligor must be put *in mora* as a condition precedent. Article 1911 provides the manner in which the debtor is to be put in default. All decisions concur in holding that this putting in default must be alleged and proved. 18 L. 88; 2 R. 498; 3 R. 400; 6 R. 450; 9 R. 495; 10 R. 524; 11 Ann. 300; 17 Ann. 33; 19 Ann. 130; 23 Ann. 513; 27 Ann. 176; 30 Ann. 1125; 37 Ann. 659, 835.

3. Even though a contract be violated by one or both parties to it, if neither elect to consider it broken, and they proceed under it, neither can be considered as having been in default. 3 Ann. 285.

4. The damage due a party for a breach of contract in the absence of fraud or bad faith are the amount of the loss he has sustained and the profits of which he has been deprived.

Damages for supposed profits based on the speculative opinion of witnesses are clearly inadmissible. All damages must be proven with legal certainty. Statements of items *in globo* without details, when called for, are not sufficient. 11 Ann. 300; 37 Ann. 492. Evidence of that description would open too wide a door to fraud to be received as full proof. 3 Ann. 45. One may have rights which he can enforce, but these rights may also be abandoned, waived and surrendered, by settlement without reservation. 33 Ann. 41.

It follows where either of the parties to a contract condone a breach of the same by proceeding under the contract, after the violations of conditions by the other, he waives his right to damages for previous violations.

The opinion of the Court was delivered by

WATKINS, J. Plaintiff sues for the recovery of $5000 damages, resulting from defendant's alleged violation of his contract; $870.62 on open account; and for the annulment of the contract.

The contract was entered into on July 1, 1882, and contains reciprocal covenants.

Plaintiff agreed " to furnish all labor, tools, cement and all other material to be used in the piers of said bridge," (the railroad bridge across Red River at Shreveport), " and set the same in the piers, to the full satisfaction of the engineer in charge, for the sum of $8 per cubic yard.

" He also agrees to set cut stone facings for said piers, to be furnished at railroad bridge site, and furnish all labor, cement, tools and other materials to be used in construction of same, for $6 per cubic yard, payments of ninety per cent to be paid by said Peter Scully, on or about the 15th of each month, or as soon as received and paid by the railroad company." The remainder was to be paid upon the completion of the work and its acceptance by the railroad company.

All the work was to be done under the supervision of the engineer, in charge, and to his full satisfaction.

It further stipulated that plaintiff should " push the work, and give it his own personal attention, and finish said work on or about the 1st of January, 1883.

Under this contract defendant undertook " to furnish foundations and such tools as he may have to spare, on work, free of cost," etc.

Plaintiff alleges that Scully " made a subsequent verbal agreement with him to pay for all necessary building material contracted for, to those delivering the material, about the 15th of the month ; and also, that he would furnish and deliver to petitioners all the cement needed for building said piers at $4.25 per barrel.

He shows that he was on " hand promptly with men and material, and the necessary arrangements to do and complete the work according to contract;" and had made some contracts for materials, such as sand, brick, etc., to be furnished; and that he was put to a heavy expense therefor, and " did his part of the work in due time, and was not in default," etc.

He represents that he did "extra work that was not included in his contract, and furnished money, lumber and material, etc., to Scully," whereby he became indebted to him in the sum of $870.25, for payment of which demand has been made.

He represents " that said Scully did not have the foundations for the piers ready, so that petitioner could do his part of the work ; that owing to dissensions between said Scully and the railroad company as to who should pay for the sheet pilings, and mistake as to the amount of dredging required for the foundations, and other causes, that said *Scully should have foreseen, and provided against,* the work was delayed, and petitioner kept idle, and on expenses, without being able to go on with his work."

He further alleges " that in consequence of said Scully's failures to do as he had promised and agreed to, petitioner found himself delayed so long, and at such heavy loss and damage that he was unwilling to suffer it longer ; and, even if he had been, that the failure of Mr. Scully to.

comply with his agreement with petitioner in reference to the brick Johnson was to furnish, and the money due, as per account, caused his debts to accumulate, and his credit to be impaired to such an extent that he found it impossible to go on with the work."

He shows "that he notified Mr. Scully about the 1st of January, 1883, that he (Scully) had forfeited his right to hold him bound to his contract, and that petitioner could claim damages," which he estimates to be $5000, for profits of which he had been deprived.

In plaintiff's amended petition he states that Scully did not complete the foundation of pier five until September, 1882, and pier six in November, 1882, and that *between* those dates defendant " could have had other foundations ready, but that he, by positive order, peremptorily stopped all work on the foundations and piers, and did not permit it to be *begun again* until about the 1st of November following."

He avers that he made application to Mr. Alfred Noble in September, the engineer in charge, to have the foundations of piers five and six got ready, so that he could go on with his work; and, afterward he made a similar application to Mr. Patton, representing the defendant, to the same effect, " and Mr. Patton stated that he could not, and would not, do anything without orders from defendant, and that Scully's orders were that all work be stopped," and that during this time he was kept idle, and unable to comply with his part of the agreement, and that his time was worth $10 per day for that time.

The defendant, for answer, admits the contract for the construction of the foundations for the piers for the railroad bridge as evidenced by the written agreement of July 1st, 1882, but denies that plaintiff has complied with its terms, and specially denies that plaintiff " was in any manner forced, or compelled by him to abandon his contract, and quit work, but that said abandonment was the voluntary act of plaintiff, and wilfully done, in order to injure respondent, and retard him in the construction of the bridge ;" that plaintiff has thereby forfeited all rights under it, and has incurred a liability to him in damages in the sum of $5750 ; and that he owes him, in addition, the sum of $1029, on open account, for which sums he claims judgment against the plaintiff in reconvention.

We have thus analyzed the plaintiff's petitions, original and amended, and defendant's answer, because it has been made an important question in this case whether the defendant was put *in mora* as a condition precedent to the institution of this suit.

Defendant's counsel contend that it is a condition precedent to the recovery of damages, for the *passive* violation of a commutative con-

tract, that the obligor must be put *in mora,* and that this must be *alleged* and *proved.*

Plaintiff's counsel insist that their petition sets out an *active,* as well as a *passive* violation of the written and parol contracts, and that the defendant was put in default antecedent to the institution of this suit.

R. C. C. 1912, provides: "The effects of being put in default are not only that, in contracts to give, the thing, which is the object of the stipulation, is at the risk of the person in default; *but in the cases hereinafter provided for, it is a prerequisite to a recovery of damages and of profits, and fruits* or the rescission of the contract."

R. C. C. 1913 provides: "In commutative contracts, when *reciprocal obligations are to be performed at the same time, or the one immediately after the other, the party who wishes to put the other in default, must, at the time and place expressed in or implied by the agreement, offer to perform, as the contract requires, that which on his part was to be performed, otherwise the opposite party will not be legally put in default.*"

R. C. C. 1931 provides: "A contract may be violated either actively, by *doing* something inconsistent with the obligation it has proposed, or passively, by *not doing* it at the time or in the manner stipulated or implied from the nature of the contract."

R. C. C. 1932, provides: "When there is an *active* violation of the contract, damages are due from the moment the act of contravention has been done, and the creditor is under no obligation to put the debtor in default, in order to entitle him to his action."

R. C. C. 1933, provides: "When the breach has been *passive* only, damages are due from the time the debtor has been put in default, in the manner directed in this chapter."

Does the plaintiff's petition, taken as a whole, charge the defendant with an *active* or a *passive* violation of their commutative contract?

Under it, the defendant bound himself to furnish the foundations for the piers, and certain tools and cement, and pay out for plaintiff's account certain moneys. Plaintiff agreed and bound himself to furnish the material and build the piers and put stone-facings on them.

He alleges that he did his part of the work in due time and was not in default.

That Scully did not have the foundations laid in proper time, and that for various causes he " should have foreseen and provided against, the work was delayed and petitioner kept idle, on expenses and unable to go on with his work  *  *  and that in consequence of said Scully's failure to do so as he had promised and agreed to, petitioner found himself delayed, etc."

He further represents that Scully did not complete the foundation of pier five until September, 1882, and pier six until November, 1882, and that "between those dates he could have had other foundations laid, but that he, by positive order, stopped all work on the foundations and piers, and did not permit it to be begun again until about the beginning of November, following "

These and other allegations quoted from plaintiff's petition clearly indicate that the defendant is only charged with a *passive* violation of the contract in the sense of the articles of the Code above quoted, unless it be in those last quoted; but we do not so regard them. 3 Ann. 285, McCord vs. Feliciana R. R.

In Gobet vs. Municipality, 11 Ann. 300, the Court say : "When the violation of a contract is passive, it is clear that the putting in default is a prerequisite to a recovery of damages. A violation is said to be passive by not doing what was covenanted to be done, or not doing it at the time or in the manner stipulated or implied from the nature of the contract."

In Hodge vs. Moore, 3 R. 400, the Court say : "The putting of a debtor in default is, under our law, *a condition precedent* to the recovery of damages or the dissolution of a contract. *The want of it need not be pleaded in defense, and can be taken advantage of at any time.* 6 O. S. 229; R. C. C. 1906.

In Hepp vs. Commargre, 10 R. 524, the Court say : "This putting in default being under our law, an *indispensable prerequisite to sustain an action of this kind, it was not necessary to plead the want of it specially, nor is it waived by the defense set up in the answer.*" 6 N. S. 624; 13 La. 229; 5 R. 83, Sewell vs. Wilcox.

In 6 La., 152, Stewart vs. Paulding, the Court say : "In an action by the vendor against the vendee of real estate adjudicated at public auction, the plaintiff's request of the defendant that he would comply with the terms of the sale, and the defendants refusal to do so, is insufficient to put the latter in default." 17 Ann. 32, Leeds vs. Fassman ; 19 Ann. 130, Pratt vs. Craft.

In 23 Ann. 513, Dean vs. Frellsen, the Court say : "A party who brings suit for damages resulting from the non-fulfillment of an obligation on the part of the other party, must show, under the general issue, that *he has complied with all the conditions imposed upon himself by the obligation before he can be heard to urge acts of violation by the other party as a reason for not* putting him in default." 27 Ann. 176, Eden vs. Lemandre ; 30 Ann. 1125, Buard vs. Boagni.

In 37 Ann. 659, Defee vs. Covington, this Court held : "An action for damages for a passive violation of a contract, must be preceded by a putting in default of the debtor, and such a putting in *mora* must be alleged in order to justify the introduction of testimony on the question of damages.

"An allegation that the debtor was put in default by means of a formal demand on him for the damages claimed, does not conform with the modes provided by the Civil Code—and is not legally sufficient to admit of proof of damages." 37 Ann. 835, Landéche vs. Sarpy.

The only averment in the petition on this important point is " that he notified Mr. Scully about the 1st of January, 1883, that he, Scully, had forfeited his right to hold him bound to his contract, and that petitioner would claim damages."

We have carefully read all the evidence in the record and have copied the subjoined extracts from the testimony of the plaintiff and defendant.

Plaintiff says: "I failed to go on with the contract I had with Scully because he failed to pay monthly instalments as he promised."

Again: "I notified Mr. Scully that I was going to quit the work. I was forced to do so. This was about the time I should have completed my work under my contract," etc.

Again: "At the time I quit and notified Mr. Scully, there were no other foundations laid    *    *    and I told him that my contract had expired."

Again: "I notified him that I intended to quit and claim damages."

Again: "Mr. Scully gave me money, but we had no settlement."

Scully says: "Mr. Livingston did no work on the bridge after the estimate of December 20, 1882. This estimate covers all the work plaintiff did on pier six.

"At the time of the last payment *no claim was made* by plaintiff for any other sum due him. Plaintiff did no work after this estimate was paid him, and notified me about the 1st of January, 1883, that he had quit work. He assigned no reason for quitting the work. He wrote me a note, but I did not keep it. In the note he said, I recollect, he stated that *his time had expired* in which he was to complete the work and that he had *quit it* and gone to doing something else."

The entire evidence of these two gentlemen is to this effect.

Instead of the pleadings and evidence furnishing proof of the putting of defendant *in mora*, it clearly demonstrates that such is not the case, but decidedly indicates that plaintiff voluntarily abandoned his contract.

It is therefore ordered, adjudged and decreed, that the verdict of the jury and the judgment thereon based are annulled and set aside; and it is further ordered, adjudged and decreed that plaintiff's suit be dismissed at his cost in both courts.

Judgment reversed.