(52 South. 264.)

No. 17,818.

DARRAGH v. VICKNAIR.

(April 25, 1910.)

*(Syllabus by the Court.)*

1. CONTRACTS (§§ 277, 279*) — BREACH — DEMAND FOR COMPLIANCE.

Where the alleged breach of a commutative contract is passive, damages become due only from the time the party committing the breach is put in default; and, in order to put him in default, the demand for compliance must be accompanied by a tender of compliance on the part of the one by whom the demand is made.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1217–1248; Dec. Dig. §§ 277, 279.*]

2. VENDOR AND PURCHASER (§ 18*)—OPTION TO PURCHASE — ABANDONMENT — RIGHT TO DAMAGES.

Where one enters upon and cultivates plantation property, with the option of buying, or paying rent, at the end of the year, and, at the end of the year, voluntarily abandons the option and the property, he cannot recover damages alleged to have been sustained by reason of the failure of the owner of the property to make him a title thereto.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 23; Dec. Dig. § 18.*]

Appeal from the Twenty-Third Judicial District Court, Parish of St. Mary; J. R. Parkerson, Judge ad hoc.

Action by J. L. Darragh against A. E. Vicknair. Judgment for plaintiff, and defendant appeals. Affirmed.

Borah & Himel and Marks, Wortham & Le Blanc, for appellant. Paul Kramer, for appellee.

### Statement of the Case.

MONROE, J. During the year 1906 plaintiff, acting through her agent, M. J. Tiernan, had her ("Justine") plantation, in the parish of St. Mary, laid off and advertised for sale in parcels, and defendant went there on two occasions with the view of making a purchase, the result being that on January 23, 1907, he made a verbal contract with Tiernan (acting for plaintiff), under which he entered upon one of the parcels and lived there, cultivating it, until 3 o'clock on the morning of Sunday, January 26, 1908, when he departed for his former residence in the parish of Assumption, carrying with him 10 mules and a cart, which had been sold to him by plaintiff, and no part of the price of which had been paid, and also carrying with him a statement of his account with plaintiff in which he was charged, for mules, $1,300; for cash advanced, $1,320, for feed and peas, $366.68, for cart, $100, and for certain items of interest (the claim for which is abandoned), and credited with $1,451.36 for cane sold, and hauling done, leaving a balance to his debit (exclusive of the interest) of say $1,635.36, to which was to be added $1,200 agreed to be paid as interest (on the purchase price of the property) or rent (in the event of his not completing the purchase), making a total debt which he left behind him of $2,835.36, for which amount (and some further amount, not now insisted on), plaintiff at once instituted suit, obtaining a writ of sequestration under which the mules and cart were seized in the parish of Assumption. Defendant by way of answer and reconventional demand says: (1) That plaintiff agreed to sell him 250 arpents of land and to furnish enough cane to plant two-thirds of the whole tract; (2) that she furnished only enough cane to plant 52 arpents, and that he was obliged to plant the balance of the land in corn and peas; (3) that she failed to supply him with necessary farming implements, save one cart; (4) that she failed, in spite of repeated demands, to make him a title to the land; (5) that the place was in bad condition when he took charge, and that he added $25 an arpent to its value by clearing and improving; (6) that he expended $750 in repairing the ditches and clearing 20 arpents of new land; (7) that he put a new roof on the dwelling at a cost of $14.40; (8) that the cane furnished by plaintiff was bad and produced only 380 tons,

whereas it should have produced 1,040 tons, thereby entailing a loss on him of $2,376; (9) that, on account of the insufficiency in quantity of the cane so furnished, he was unable to plant 114 arpents of the land, on which he could have made 2,280 tons of cane, and a profit in money of $2,508; (10) that he put down for seed 300 tons of cane, which he could have sold for $1,080; (11) that he prepared 80 arpents of land for the season of 1908 at a cost of $400; (12) that he left on the land 52 arpents of first year's stubble, worth $260; (13) that he left 35 loads of hay, worth $175; (14) that the land in question is worth $100 an arpent, and that he is entitled to the difference between that valuation and the amount that he agreed to pay, or $6,250; (15) that it cost him to go from his home to the parish of St. Mary and back $100; (16) that he assisted plaintiff in harvesting her crop, and rendered service to the value of $73.83; (17) that he reached home too late to make a crop in 1908 and lost what he could have made, or say $1,000. And he prays that plaintiff's demand be rejected, and (reserving his right to claim further damages for the alleged wrongful sequestration) that he have judgment against her, in reconvention, for $22,684, with interest.

## Opinion.

On the trial counsel for plaintiff objected to the testimony offered in support of the claim for damages on the ground that no damages are recoverable for plaintiff's alleged inexecution of the contract without proof of a putting in default; that the allegations of the reconventional demand are too vague to admit of proof; that the damages are remote and speculative, upon which objection the trial judge reserved his ruling. Eventually, however, he gave judgment for plaintiff for $2,835.36, with interest, maintaining the sequestration, and recognizing plaintiff's lien and privilege on the mules and cart, from which we infer that he concluded either that the testimony which had been objected to was not properly before him for consideration, or that it was ineffective for the purpose for which it was offered. As there are allegations in the reconventional demand under which defendant was perhaps entitled to offer evidence to show that he had put plaintiff in default, and as defendant could not well have been controlled in the matter of the order in which he chose to introduce his evidence, we do not find that, so far as the first ground of objection is concerned, there was any error in the ruling of the judge. On the other hand, if, when the evidence was all in, the judge found that no putting in default had been proved, it was entirely proper for him to disregard all the evidence so introduced which tended to support defendant's claim for damages, the case being one of a commutative contract, in which, the alleged breach being passive, damages could have become due only from the time the debtor was put in default, and in which it was necessary to the accomplishment of that result that defendant should have tendered performance on his part. Civ. Code, arts. 1913, 1933. From the view that we take of the whole case, we find it unnecessary to make any specific ruling on the other grounds of objection, though, no doubt, some of the allegations of the petition are obnoxious to the objection of vagueness, and some of the damages claimed are too speculative and uncertain to be susceptible of proof. We interpret the contract, the terms of which were loosely expressed or not expressed at all, and find the facts disclosed by the record to be as follows: Defendant agreed to take, and plaintiff agreed to let him have, 200 acres of land at $75 an acre, should he, by the end of the year, determine to buy it, the total price to be paid in 12 annual installments, with interest, paid annually, on the whole

amount, and one-fourth of the crop to be pledged or set aside to secure such payments, and plaintiff agreed in the meanwhile (at least, for the year 1907) to supply defendant with enough plant cane and stubble to plant two-thirds of that portion of the 200 acres which was open to cultivation, and to make him such advances in money and supplies as might be required for the making of a crop.

Plaintiff sold to defendant 10 mules for $1,300, and one wagon for $100, and it was agreed and understood that they were to be paid for at the end of the year, at which time, if defendant elected to buy the land, he was to pay the first installment of the price and the sum of $1,200 as the first year's interest on such price (the rate of interest agreed on being 8 per cent.). On the other hand, if he elected not to buy the property, he was nevertheless to pay for the mules and cart and was to pay the $1,200 as rental of said property for the year. Defendant had inspected the property before entering into the contract, and presumably knew its condition, and the condition of the ditches and improvements, and plaintiff did not undertake to do anything with respect thereto, nor did she undertake to furnish defendant with any farming implements other than the wagon which she sold and delivered to him. Defendant had also inspected the plant cane before entering into the contract, and, though he now makes some complaint of its quality, the evidence fails to satisfy us that it was below the average of the year in that neighborhood, or that it was not such cane as plaintiff had the right to tender. Beyond that, it does not appear that defendant during the time that he was on the place made any complaint of the quality of the cane. He also now complains that there was not enough of the cane—that is to say, that there was not enough (plant cane and stubble) to plant two-thirds of 250 acres (or arpents)—

but, as we have stated, his contract concerned 200 acres, and of the 200 acres in question there were not more than say 130 acres that were cultivable. The testimony of defendant and his son-in-law notwithstanding to the contrary, we do not interpret the contract to mean that plaintiff was to furnish plant cane and stubble enough for the planting of the woodland and swamp, as well as the cultivable land, and we find that there is a preponderance of evidence to the effect that the amount furnished was sufficient for the planting of all the land that was cultivable or that was expected to be made so. We do not find that defendant at any time made any serious demand upon plaintiff (or her agent) for the execution of a deed to the land.

The agreement with regard to the payment of the $1,200 indicates that it was not within the contemplation of the parties that the question whether defendant would avail himself of his option to buy would be determined before the end of the year, and though he makes some general assertions to the effect that during the year he spoke to Tiernan on the subject on several occasions, and that Tiernan put him off and promised to attend to it later, the main attempt to prove a demand for the title and a refusal to execute it relates to something that is said to have occurred at about the expiration of the year from the date upon which defendant went into possession. Defendant fixes the date as January 23, 1908, which was just a year from the date on which he took possession. His son, who testified upon the subject, seemed to think it was January 16th or 19th. There is, however, a witness by the name of Robichaux, who appears to be entirely credible and disinterested, and who testifies that about that time (perhaps a week or two before) he was requested by defendant to go to Tiernan and say to him that defendant would like to have a "settlement," which he did, and he further says

that Tiernan sent word back to defendant that he would make a settlement with him whenever he wanted it, to which (according to Robichaux) defendant made no reply. Defendant admits in his testimony that he left Justine plantation at 3 o'clock on the morning of Sunday, January 26, 1908, and started back to the parish of Assumption, and he says that he did not notify any one of his intended departure because he "didn't have nobody to notify." He took with him the 10 mules and the cart that he had bought from plaintiff, and which were wholly unpaid for, and they were seized in the parish of Assumption by the sheriff of that parish under the writ of sequestration herein issued. There is no suggestion in the record that defendant had the $1,400 with which to pay for the mules and the cart, or the $1,200 which was due, either as rent or interest, or the $1,635.36 which he owed plaintiff for advances and supplies; nor is there any suggestion that in the alleged interview between him and Tiernan on January 23, 1908 (when, he says, he demanded a title), he made any offer or tender with respect to the obligations thus referred to. Tiernan testifies that the first that he heard of defendant after he had sent word by Robichaux that he was ready to settle with him was that he had left the plantation in the night, with the mules and the cart, and the next time he saw him was when he appeared on the trial of the case. Conceding, however, that there was some such interview at some time, our conclusion, from the testimony which the defendant and his witnesses (son and son-in-law) give in regard to it, and from the circumstances existing before, at the time, and afterwards, is that there was no serious demand for a title, but possibly an attempt on the part of defendant to lay the foundation for the defense which he has undertaken to make in this case, and that he never at any time really demanded or wanted a title, and never conveyed to Tiernan's mind the idea that he wanted or was demanding it. In view of the conclusions thus stated, it follows that defendant's abandonment of plaintiff's land, and of his right to buy it, was purely voluntary; that his claim for damages falls; and that his liability to plaintiff for the balance due (after deducting certain credits) for the price of the mules and cart, for the advances of money and supplies, and for the rent for the use of plaintiff's land during the year 1907 should be enforced.

The learned judge ad hoc so found, and we think he was correct.

The judgment appealed from is accordingly:

Affirmed.