(101 South. 144)

No. 26497.

PIPES v. PAYNE et al.

(June 27, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Mines and minerals. ⬤⟾58—One dollar no consideration for lease, but agreement to explore and pay royalties is.**

One dollar would not be adequate consideration for an oil and gas lease on nearly 1,000 acres; but there is an adequate consideration, where true consideration is exploration of land and payment of substantial royalties.

2. **Mines and minerals ⬤⟾58—Drilling one well constituted sufficient consideration for lease.**

Drilling one oil well in exploration of tract was sufficient consideration for an oil and gas lease of 997 acres, providing for commencing a well within a certain time, or $1 per acre for deferring commencement 12 months.

3. **Mines and minerals ⬤⟾78(1)—Implied condition that, when existence of oil is apparent, lessee shall put down all wells reasonably necessary.**

It is an implied condition of every oil lease that, when existence of oil in paying quantities is made apparent, lessee shall put down as many wells as may be reasonably necessary to secure oil for common advantage.

4. **Mines and minerals ⬤⟾78(3) .— Lessor should demand further development before asking forfeiture of oil lease.**

Lessor, before suing to have oil lease declared forfeited for failure to drill more wells reasonably necessary to secure oil for common advantage, should have made demand on lessee to further develop property, and should

have given reasonable time within which to do so.

5. **Mines and minerals ⬤⟾78(7)—Petition to forfeit oil lease insufficient.**

Petition to forfeit oil lease for failure to further develop land did not disclose a cause of action, where it did not allege that defendants were put in default by demand for further development, under Civ. Code art. 1912, though it was alleged that plaintiff made demand under Act 168 of 1920 to furnish an instrument authorizing cancellation of lease on public record, which demand presupposes forfeiture.

Appeal from First Judicial District Court, Parish of Caddo; E. P. Mills, Judge.

Action by Randolph Pipes against C. E. Payne and another. Judgment for defendants, and plaintiff appeals. Affirmed.

M. D. Dimitry, of Shreveport, and Wm. Winans Wall, of New Orleans, for appellant,

Wallace, Lyons & Wallace, of Shreveport, for appellees. .

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

OVERTON, J. Plaintiff alleges that he is the owner of certain described lands, situated in the parish of Caddo, consisting of 997 acres, which he alleges he acquired from the Caddo Mineral Lands Company. He also alleges that prior to the date of his acquisition his vendor entered into a pretended lease, known as an oil and gas lease, with one W. J. Homer; that said Homer made an assignment of said pretended lease to the Zenith Petroleum Company; that the Zenith Petroleum Company assigned it to M. G. Peck, and that Peck assigned it to E. C. Payne and P. L. Hart; and that Payne and Hart are in possession of the property, operating the wells thereon, and claiming possession of the property by virtue of the aforesaid lease and assignments. The purpose of the suit is to annul and cancel said lease and the assignments thereof on the following grounds, to wit: (1) Because said lease was

granted without serious consideration, the amount named therein as consideration being the sum of $1; (2) because if the true consideration be considered to be the development of the property, then the assignees, Payne and Hart, have failed to develop it, although more than two years have elapsed since the assignment of the lease to them.

The petition then sets out that, prior to the pretended lease to Homer, there were three producing wells on the property, two of which were fully equipped; that Payne and Hart took possession of these wells when they went into possession of the property, and drilled thereon a fourth well, which was a shallow one; that, notwithstanding that the three wells that were on the property when the lease to Homer was made were producing wells, and notwithstanding the fact that said lease affects land known to be in oil-producing territory, and consisting of 997 acres, and notwithstanding that more than two years have elapsed since the completion of the shallow well by the present assignees, there has been no further development of the property. The petition then alleges:

"That your petitioner has demanded the cancellation of the said pretended lease and assignment in accordance with Act 168 of the legislative session of the year 1920, and the said Payne and Hart have failed to comply with the said demand, a copy of which is attached hereto and made a part hereof."

The demand referred to in the preceding paragraph, and made a part of plaintiff's petition, is a demand to furnish plaintiff with an instrument, duly acknowledged, directing the cancellation of the lease, and the assignments thereof, on the records of the parish of Caddo, and the demand contains a notice that, if this be not done, plaintiff will claim the damages provided in the aforesaid legislative act. The petition then alleges that plaintiff is entitled to damages in the sum of $3,500, as attorney's fees, because of the failure of defendants to furnish said instrument, directing the aforesaid cancellation of said lease and the assignments thereof, and for judgment against defendants for damages, as above set forth, with legal interest thereon from the date of the aforesaid demand until the damages allowed are paid.

Defendants excepted to plaintiff's petition on the ground that it discloses no cause or right of action. The trial court sustained this exception, and dismissed plaintiff's demand, and plaintiff has appealed.

### Opinion.

[1] The first ground urged by plaintiff for the annulment of the lease, as we have seen, is that the lease was not granted for a serious consideration; the only consideration recited being $1. If the only consideration were $1, then under our law that consideration would be considered wholly inadequate for the rights granted, and so much so as to justify the annulment of the contract. In fact, $1 would be considered as no consideration at all for the granting of the right to explore for oil on nearly 1,000 acres of land, located in territory considered to be oil-producing. Murray v. Barnhart, 117 La. 1023, 42 South. 489. However, plaintiff has made the contract of lease attacked a part of his petition, and has attached it thereto for reference. By referring to the contract thus attached, it appears that the $1 consideration, therein recited, is only the nominal consideration, and that the true consideration is the exploiting of the land for oil and gas and the payment of royalties, amounting to one-eighth or one-sixth, according to production, of all oil obtained from beneath the surface of the land, and $200 a year for each well producing only gas, while the gas is used off the premises.; and while the contract of lease does not mention specifically the three producing wells that were on the property at the time the lease was executed, yet, as the petition alleges that defendants are op-

erating these wells, and as no complaint appears to have been made relative to their operating them until notice, demanding the cancellation of the lease, was given, which was after the wells had been operated for two years or more, it may be fairly inferred that it was contemplated that defendant should operate them, and pay the royalty to the holder of the lease, as provided for other wells by the contract, and the operating of these wells, and the obligation to pay the royalties, for so doing, may be considered as an additional consideration for the granting of the lease. The consideration stipulated and contemplated was sufficient. But, whether or not it was contemplated that the lessee or his assignees should operate the three wells mentioned on the same terms as provided for wells which they might drill, we think that the obligation to explore the land for oil, which obligation defendants have, at least, discharged, in part, by drilling one well, and the obligation to pay royalties based on the production, constitute a serious and sufficient consideration for the lease. Hence we conclude that plaintiff's petition discloses no cause of action on the ground of attack considered.

[2] The remaining ground upon which the lease is sought to be annulled, or declared forfeited, is, as we have seen, that, if the obligation to develop the property be considered the true consideration and a sufficient one, then that defendants have failed to develop the property, for they have drilled only one well, and more than two years have elapsed since they drilled it, and since then there has been no development of the property. The contract of lease provides that, if a well should not be commenced on the land before August 9, 1920, then the lease shall be considered to have terminated, unless the lessee should pay or tender to the lessor, or deposit to the lessor's credit in a designated bank, $1 for every acre of land leased, and that this sum shall be considered as rent, and its payment or tender shall confer the privilege of deferring the commencement of a well for 12 months. And the contract further provides that, should the first well drilled on the land leased be a dry one, then, in that event, if a second well is not commenced on the land within 12 months from the expiration of the last rental period, the lease shall be considered to have terminated, unless the lessee on or before the expiration of said 12 months shall resume the payment of rentals in the same amount and in the same manner as stated above, and that the effect of the resumption of the payment of rentals shall be to continue the contract in force, as if there had been no interruption in their payment. These are the only express provisions in the contract relative to the development of the property and the payment of rent.

[3] While there is no express provision in the lease for the further development of the property after the drilling of the first productive well, yet, on the other hand:

"It is an implied condition of every lease of land, for the production of oil therefrom, that when the existence of oil, in paying quantities, is made apparent, the lessee shall put down as many wells as may be reasonably necessary to secure the oil for the common advantage of both lessor and lessee. Whatever ordinary knowledge and care would dictate, as to the proper thing to be done for the interest of the lessor and lessee, under any given circumstances, is that which the law requires to be done, as an implied stipulation of the lease." Thornton on Oil and Gas (2d Ed.) § 111; Caddo Oil & Mining Co. v. Producers' Oil Co., 134 La. 701, 64 South. 684.

This defendants concede, but they take the position that they have entered into possession of the property, and are still in possession of it under the lease, and have drilled one well, as appears from plaintiff's petition, and that, under these circumstances as the lease does not declare a forfeiture for the failure to drill other wells within a specified time, or at any other time, after the drilling

of the first productive one, plaintiff should have made demand on them, before suing for a forfeiture, to further develop the property, and should have given them a reasonable time within which to further develop it. In other words, the position of defendants is that plaintiff should have put them in default before suing to have the contract declared forfeited, and, as plaintiff has not alleged that he put them in default, that his petition discloses no cause of action.

[4] As we have seen, defendants are in possession of the property, are operating the wells on it, and have drilled one well under the lease. It is true the petition does not in so many words allege that this well is one that is productive, but the allegations of the petition justify the inference that it is. As we have also seen, the lease does not contain a clause declaring that the lease shall be declared forfeited for the failure to drill other wells, after the drilling of the first productive one, nor does it contain any express provision for the drilling of other wells after the drilling of the first successful one. Under these circumstances, we think that plaintiff, before suing to have the contract declared forfeited, should have made demand on defendants to further develop the property, and should have given them a reasonable time within which to have done so. In other words, plaintiff should have put defendants in default. In this connection, it may be observed that it is said in Thornton on Oil and Gas (3d Ed.) § 182, p. 302, that:

"If the lessor desires to declare a forfeiture of the lease for the reason that the land has not been fully developed, although the lessee has entered and developed a part of it, he must give notice to such lessee of his intention to declare a forfeiture if the lease is not fully developed, and reasonable time must be given for the development."

See, also, Civil Code, arts. 1912 and 2047.

[5] As plaintiff's petition does not allege that defendants were put in default, we are of the opinion that it discloses no cause of action. Livingston v. Scully, 38 La. Ann. 781; C. C. art. 1912. In so holding, we have not overlooked the fact that plaintiff made written demand, under Act 168 of 1920, on defendants to furnish him with an instrument authorizing the cancellation of the lease on the public records; but that demand is not one to further develop the property, but is merely one to furnish plaintiff with the instrument mentioned above, and does not answer the purpose of a putting in default for a failure to further develop; but the demand made presupposes that the lease has been forfeited, and was intended, as provided in the legislative act under which it was made, to lay a basis for the recovery of a reasonable attorney's fee to have the forfeiture adjudged, and for the recovery of certain other damages, if suffered, in the event of the failure or refusal to furnish the instrument demanded.

In closing, we may say that we have carefully examined the authorities cited by plaintiff, and we find nothing in them in conflict with the views here expressed, or that would justify us in reaching a different conclusion from the one here reached.

For the reasons assigned, the judgment appealed from is affirmed; plaintiff to pay the costs.