71 So.2d 675 (1954)
LOGAN
v.
BLAXTON.
No. 8105.
Court of Appeal of Louisiana, Second Circuit.
January 26, 1954.
On Rehearing March 24, 1954.
Rehearing Denied April 22, 1954.
Writ of Certiorari Denied May 31, 1954.
Joseph R. Bethard, Shreveport, for appellant.
Hussey & Smith, Shreveport, for appellee.
AYRES, Judge.
This is an action by the lessor for the cancellation of an oil, gas and mineral lease covering 40 acres of land situated in Caddo Parish, Louisiana. Plaintiff alleges that he executed this lease to the defendant on November 25, 1946, followed by a correction *676 in the description of the property on November 15, 1949. It is further alleged that the primary term of the lease was for a period of three years, as provided by Article 2 thereof, which reads as follows:
"Subject to the other provisions herein contained, this lease shall be for a term of three (3) years from this date (called `primary term') and as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled hereunder."
For a cause of action, plaintiff then alleges:
"IV. No oil, gas or other mineral has been produced under the above described lease from the land affected thereby since the month of September, 1951, for which reason said lease has terminated and should be cancelled from the records of Caddo Parish."
Defendant, after admitting the execution of the lease, contended that Article 2 of the lease above quoted is subject to and modified by the provisions of Article 12, subparagraphs (a), (b), (c) and (d), and alleged that said lease is in full force and effect. Defendant further alleged that oil was produced from the well located on said leased premises until the month of November, 1951, at which time it was necessary to temporarily discontinue operations for the production of oil, due to the fact that the storage tanks located on said lease were full, and that the condition of the road over which said oil had to be transported to market was impassable due to excessive rains, and that such conditions continued until the filing of the suit, May 19, 1952, and that it was not practicable or feasible to transport and market said oil other than by trucks, and that, therefore, he had been unable to sell, market or produce, and prevented from selling, marketing and delivering such crude oil by Force Majeure, as defined in Article 12 of the lease, which constituted Acts of God. Defendant tendered, in his answer, to plaintiff an annual rental of $1 per acre per year, and offered to pay same during the period that such Force Majeure continued.
On these issues the case was tried on the merits in the District Court, and judgment was rendered rejecting plaintiff's demands. The trial judge assigned oral reasons for his judgment, but we are informed by briefs of the appellant and appellee that the trial judge was of the opinion that due to the rains, this well was inaccessible by trucks during the period claimed by the appellee and that, therefore, the defendant, under Article 12 of the lease, was prevented by Force Majeure from producing and marketing the oil from said leased premises. Article 12 reads, so far as pertinent to the issues here, as follows:
"(a) The term `Force Majeure' as used herein shall mean and include: * * * lack of labor or means of transportation of labor or material; Acts of God; insurrection; flood; strike.
"(b) If by reason of Force Majeure as herein defined, lessee is prevented from or delayed in drilling, completing or producing any well or wells for oil, gas or other mineral on the leased premises, then while so prevented or during the period of such delay lessee shall be relieved from all obligations, whether express or implied, imposed on lessee under this lease, to drill, complete or produce such well or wells on the leased premises, and lessee shall not be liable in damages and this lease shall not be subject to cancellation for failure of lessee to drill, complete or produce such well or wells during the time lessee is relieved from all obligations to do so. Provided, this provision shall not relieve lessee from the necessity of paying rentals during the primary term in order to continue this lease in force under the specifications of paragraphs 4 and 6 above.
"(c) If upon or at any time after the expiration of the primary term hereof, while this lease is in force, lessee cannot maintain same in effect because prevented by Force Majeure from fulfilling the particular requirement (operations on or continued production from *677 the leased premises as the case may be) necessary so to do as specified in paragraph 2 hereof, then while so prevented and for six months thereafter this lease shall nevertheless continue in effect; and if within such six months lessee either commences operations on or resumes production from the leased premises, as the case may be, this lease shall continue in effect thereafter as though Force Majeure had not intervened. During any period this lease is continued in force after its primary term by Force Majeure as herein provided, lessee shall pay to the owners of the royalty hereunder, or to the credit of such owners in the depositary bank above named, as royalty, an amount equal to $1 per acre per year for each acre retained hereunder. Such payments shall be made annually, and shall become due on each anniversary hereof while such Force Majeure continued, except the first payment shall be made within a reasonable time after occurrence of Force Majeure and shall be proportionate in amount to the unexpired portion of the then current year, if for less than a year. Nothing herein shall impair the right of lessee to release this lease as to all or any portion of the lands covered hereby and relieved of all obligations thereafter accruing as to the acreage released.
"(d) The specification of causes of Force Majeure herein enumerated shall not exclude other causes from consideration in determining whether lessee has used reasonable diligence wherever required in fulfilling any obligations or conditions of this lease, express or implied, and any delay of not more than six months after termination of Force Majeure shall be deemed justified."
We are not impressed, from the evidence, that the rains complained of constituted a flood or floods, or that they constituted such a Force Majeure or Act of God as would have prevented defendant from transporting, or causing to be transported, to market the oil from these leased premises. The well was located, according to the testimony, at approximately three-quarters of a mile from a hard surfaced road, and there were other wells located in that area a greater distance from the road, and oil from those wells was marketed during this period, although over a different route. It was not shown that it was impossible to improve these roads or to obtain ways over other property, or to obtain smaller transport trucks, if needed, to transport this oil to market. Moreover, the rains were seasonal rains, and were such as to be expected. Even excessive seasonal rains to the extent as shown by the reports of the local Weather Bureau for the period involved, would not, in our opinion, constitute Force Majeure so as to relieve the defendant of his obligation under the lease contract.
Should the defendant be relieved of his obligation to produce and market the oil during and for the reason of the seasonal rains each year, and covering a like period of time as contended here, that is, from November to May, inclusive, and then, by the terms of the lease, be allowed six months to begin operations again, such delay would extend into the next rainy season, and the effect would be that he could hold the lease perpetually without any activity on his part. We could not so construe the terms of this lease.
We are not of the opinion, from the evidence, that defendant established due diligence in his attempt to dispose of the production, and while it would appear from the evidence that it was not economical to connect this well with any of the pipe lines in that vicinity, it appears that defendant made only one effort to procure transportation for the oil, and as to that the testimony of the defendant and his father is at considerable variance. The testimony does not establish that transportation in small trucks or by some other means of conveyance could not have been profitably effected.
However, Article 9 of the lease provides in part as follows:

*678 "* * * in the event lessor considers that operations are not being conducted in compliance with this contract, lessee shall be notified in writing of the facts relied upon as constituting a breach hereof and lessee shall have sixty (60) days after receipt of such notice to comply with the obligations imposed by virtue of this instrument."
A certified copy of the lease contract was attached to and made a part of plaintiff's petition, and hence governs and controls the allegations of the petition. The lease agreement should be construed as a whole, and the above-quoted provision, in our opinion, is specifically applicable to the situation here as a condition requisite to an action for cancellation, and it should, therefore, be given effect. The record evidences plaintiff's failure to comply with this provision by notifying the defendant in writing of the facts relied upon as constituting a breach and allowing the defendant sixty days thereafter to comply with his obligations.
The contract is the law between the parties, and the quoted provision is a part of that contract. However, without such a provision in the contract, it would appear that a putting in default would be necessary before bringing an action for the dissolution of the contract. In the case of Temple v. Lindsay, 182 La. 22, 161 So. 8, 12, the Supreme Court held with respect to a similar contract:
"Where one obligates himself to do something, not within a definite time, but within a reasonable time, or to prosecute work to completion `with due and reasonable diligence,' the question whether the work was done within a reasonable time or whether the contract was prosecuted with reasonable diligence is not one of law, but of fact necessarily, depending upon conditions and circumstances. An obligee has no right to declare his obligor in default merely because in his opinion the contract was not performed with due diligence or within a reasonable time. This defendant was not put in default by operation of the law, and, as plaintiff did not put him in default, and as he did not put himself in default, he was never put in default, at all.
"If defendant was guilty of any breach of the contract at all, it was no more than a passive breach of it, and in such cases a putting in default is a condition precedent to a recovery either for damages or in a suit for dissolution. [LSA] Civ.Code, arts. 1931-1933; Darragh v. Vicknair, 126 La. 171, 52 So. 264.
"Under the circumstances here disclosed and under the law and jurisprudence, plaintiff, before suing to have the contract declared forfeited, should have made demand on defendant to complete his contract and should have given him reasonable time within which to do so. This view is in accord with that which we have expressed before in the following cases: Watson v. Feibel, 139 La. 375, 71 So. 585; Pipes v. Payne, 156 La. 791, 101 So. 144; Caldwell v. Alton Oil Co., 161 La. 139, 108 So. 314; Doiron v. [Calcasieu] Oil Co., 172 La. 553, 134 So. 742."
The Supreme Court held in the case of Pipes v. Payne, supra, that the lessee, before suing to have an oil lease declared forfeited for failure to drill more wells reasonably necessary to secure oil for their common advantage, should have made demand on lessee to further develop the property, and should have given reasonable time within which to do so; and that a petition to forfeit an oil lease for failure to further develop land did not disclose a cause of action where it did not allege that defendants were put in default by demand for further development under Article 1912 of the LSA-Civil Code, although a demand was made under Act 168 of 1920 for an instrument authorizing the cancellation of the lease on the public records, which demand, of course, presupposed a forfeiture.
In the case of Brown v. Sugar Creek Syndicate, 195 La. 865, 197 So. 583, 593, the Supreme Court held in connection with *679 a suit for cancellation of certain mineral leases and pooling and unitization agreements:
"Plaintiffs do not allege that they made any demand for further development or that they put the defendant lessees in default. In the absence of allegations and proof to that effect, plaintiffs are not entitled to have the leases cancelled on the grounds of failure to reasonably and further develop the leased premises. Pipes v. Payne, 156 La. 791, 101 So. 144; Hiller v. Humphreys Carbon Company, 165 La. 370, 115 So. 623; and Temple v. Lindsay, 182 La. 22, 23, 161 So. 8."
It is our opinion that if the lessor considered that lessee was not conducting his operations in compliance with the lease contract, he should have notified the lessee of the facts relied upon as constituting a breach of such contract, and should have allowed him sixty days, as stipulated in said contract after receipt of such notice, to comply with the obligations imposed upon the lessee by the contract. He failed to do so, and his demands, for the reasons hereinabove set forth, should be rejected and the judgment of the District Court affirmed at his cost. And it is so ordered.

On Rehearing
HARDY, Judge.
In our original opinion and decree in this case we predicated our affirmance of the judgment on the ground that the lessor had failed to comply with that provision of the lease requiring written notice of the breach thereof and the allowance of a sixty-day period for compliance.
In application for rehearing counsel for appellant has correctly pointed out the fact that the breach of the lease contract arose subsequent to the expiration of the primary term of the lease, under which circumstance the provision noted above is inapplicable. Taylor v. Kimbell, 219 La. 731, 54 So.2d 1; Sittig v. Dalton, 195 La. 765, 197 So. 423; Producers Oil & Gas Company, Inc., v. Continental Securities Corporation, 188 La. 564, 177 So. 668.
Our original opinion disposed of the other issues presented in this case contrary to the contentions of defendant-appellee. Inasmuch as we adhere to the opinion expressed and the conclusions reached with respect to such issues, it follows that the judgment should be reversed.
Accordingly it is ordered, adjudged and decreed that there be judgment in favor of plaintiff, W. E. Logan, and against the defendant, G. L. Blaxton, Jr., declaring that certain oil, gas and mineral lease executed by W. E. Logan, as lessor, in favor of G. L. Blaxton, Jr., as lessee, affecting the NW¼ of NE¼ and NE¼ of SW¼ of Section 3, Township 20 North, Range 15 West, Caddo Parish, Louisiana, to be terminated, and ordering the same cancelled from the records of Caddo Parish, Louisiana; together with all costs.
The right of defendant-appellee to make application for rehearing is specifically reserved.