111 So.2d 576 (1959)
Mrs. Addie TAYLOR et al., Plaintiffs-Appellees,
v.
Myron T. BUTTRAM et al., Defendants-Appellants.
No. 8975.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1959.
*577 Harris & Harris, Mansfield, for appellant.
Colvin & Hunter, Mansfield, for appellee.
Before GLADNEY, AYRES and JAMES E. BOLIN, JJ.
BOLIN, Judge ad hoc.
The plaintiffs in this suit, who were joined by intervening plaintiffs, filed the suit seeking a decree terminating and cancelling an oil and gas lease dated December 7, 1937, executed by John W. Matthews and others in favor of Petroleum Heat & Power Company with a primary term of ten years. The plaintiffs, Mrs. Gussie Matthews, Mrs. Mattie Gallaspie and Mrs. Fannie Hill are three of the original lessors, and the other plaintiffs and intervenors are successors representing the remaining lessors.
The defendants are the successors in title from the original lessee involving a forty-acre tract of land in DeSoto Parish, Louisiana, described as the Northeast Quarter of the Southeast Quarter of Section 30, Township 12 North, Range 11 West. The remainder of the 120 acres originally covered by the subject lease is not at issue herein, inasmuch as same was apparently released by the original lessee.
The action is based on the averments that the lease had lapsed and terminated under the terms thereof because:
(1) The primary term of the lease had terminated on December 7, 1947; and the lessees had ceased to produce oil and gas from the well thereon for more than sixty days without conducting additional drilling or reworking operations; and
(2) The well on the lease is incapable of producing an amount sufficient to yield a reasonable return to the lessor or lessee and is, therefore, not a paying well. The plaintiffs further sought an award of $500.00 as attorney's fees under the provisions of LSA-R.S. 30:102.
The defendants, Buttram and Sexton, filed answers to the petition claiming that they were operating a producing oil well on the leased tract in question and denying that they had ceased production or failed *578 to conduct reworking operations thereon for a period of sixty days, and thereby claimed that the lease was existing and binding. The remaining defendants, who were the record owners of approximately a three-fourths interest in the lease, were absentees and served through an attorney appointed to represent them. They failed to answer and judgment was rendered against them by confirming a default.
There was a judgment in the district court in favor of plaintiffs, decreeing a termination and cancellation of the lease and further awarding the plaintiffs against the defendants, Buttram and Sexton, the amount of $500 as attorney's fees. The defendants, Buttram and Sexton, have perfected the appeal which is now before this court.
The oil and gas lease in question has a primary term of ten years and was dated December 7, 1937, which means that the same expired on December 7, 1947, unless thereafter maintained by production or additional drilling and reworking operations pursuant to the terms of the said lease. It is undisputed that the well was drilled on the leased premises about 1938, which well produced oil and gas in paying quantities continuously until some time during the year 1954.
The plaintiffs in the original suit contend that this well ceased production and that during the said period, which was in excess of sixty days, there was also no additional drilling or reworking operations and that, therefore, the lease terminated by its own terms. Plaintiffs further contend that during the period of four years prior to the date suit was filed the well produced an average of only eleven barrels per month, which constituted an insufficient return to classify the well as having any production in paying quantities. The disputed lease in question, as corrected, contains the following provisions:
"2. Subject to the other provisions herein contained, this lease shall be for a term of ten years from this date (called primary term), and as long thereafter as oil, gas or other mineral is produced from said land hereunder.
"5. * * * if after discovery of oil or gas the production thereof should cease from any cause, this lease shall not terminate if Lessee commences additional drilling or reworking operations within sixty (60) days thereafter or (if it be within the primary term) commences or resumes the payment or tender of rentals * * *."
"8. In case of cancellation or termination of this lease for any cause, lessee shall have the right to retain under the terms hereof forty acres of land around each well producing, being worked on, or drilling hereunder, such tract to be designated by lessee in as near a square form as practicable. And in the event lessor considers that operations are not being conducted in compliance with this contract, lessee shall be notified in writing of the facts relied upon as constituting a breach hereof and lessee shall have sixty (60) days after receipt of such notice to comply with the obligations imposed by virtue of this instrument."
As previously stated, this lease is dated January 7, 1937, and, therefore, under (2) the primary term expired on January 7, 1947. However, if production had been obtained, the lease continued in force "as long thereafter as oil, gas or other mineral is produced."
Such production ceased in March, 1954, and there was no production from that time to May, 1955, for a period of fourteen months. In June, 1955, ninety barrels of oil were produced. There was no production in July, 1955, through May, 1956, inclusive. In June and July, 1956, the well produced 212 barrels and in October, 1956, it produced 103 barrels. There was no production from October, 1956, through December, 1957, a period of fourteen months. The present suit was filed on November 27, *579 1957, at which time there had been no production for a period of thirteen months immediately preceding the filing of the suit.
Thus, in summary, we may state that production ceased during three rather lengthy periods, as follows:

April, 1954, through May,
1955 -------------------- 14 months
July, 1955, through May,
1956 -------------------- 11 months
November, 1956, through
November, 1957 ---------- 13 months

The above facts seem to be established beyond much doubt, as shown by a certificate from the Department of Conservation which was introduced in evidence and also by a deposition of one of the purchasers of the oil.
The appellants endeavor to show by several witnesses that during the period when there was no production the lease was constantly maintained by reworking operations conducted without any delay of more than sixty days. This proof was offered mostly by the testimony of one of the defendants, Harvey Sexton, and Johnnie Kromer. A review of this testimony will show that none of these witnesses were able to testify to any degree of certainty as to specific acts or dates. The trial court was apparently not impressed with this testimony, and neither are we.
Therefore, the proof seems to be abundant that there was no work of any consequence done toward reworking any of these wells for a period of at least nine months immediately preceding the filing of this suit, and that during this same period of time there was no production of any oil or gas. It is, therefore, the opinion of this court that the provisions of Sections (2) and (5) of the subject lease are controlling insofar as the facts of this case are concerned, and the said lease was terminated by its own provisions.
There was quite an effort made by the defendants in the original suit to show that there were reworking operations during other specific periods of non-production prior to the year 1957. However, inasmuch as it had been proven that there was no reworking or production during a period of nine months or longer immediately preceding the filing of the suit, such other reworking activities will have no effect.
On this question we particularly cite the opinion of the Supreme Court in the case of Seiber v. Ringgold, 1957, 231 La. 983, 93 So.2d 530, 531, wherein the Court considered and cancelled a lease containing the exact clause as appears in the disputed lease. Referred to that clause the court said:
"However, prior to January 1, 1952 such production ceased, and thereafter there were no reworking or drilling operations as required by the terms of the lease. * * * as a result the lease, which was the source of the rights claimed herein by the appellants, terminated."
The appellants further contend that under the terms of the lease in question it is necessary that lessors give notice of any alleged failure and thereby put the defendants in default and cite Pipes v. Payne, 1924, 156 La. 791, 101 So. 144.
This case has no application to the one under consideration because putting in default is not required in the instant case inasmuch as the appellants are not charged with breaching the lease contract.
As to the appellants' contention that Section (8) of the lease contract required lessors to give lessee sixty days notice of any alleged failures to rework before any suit could be filed, this provision obviously applies only to operations during the primary term of the said lease, while Section (2) thereof applies after the primary term has expired. This exact point was squarely decided adversely to the contentions of the appellants here in the following cases: Logan v. Blaxton, La.App., 2 Cir., 1954, 71 So. 675; Taylor v. Kimbell, 1951, 219 La. 731, 54 So.2d 1; Sittig v. Dalton, 1940, 195 *580 La. 765, 197 So. 423; Producers Oil & Gas Co. v. Continental Securities Corp., 1937, 188 La. 564, 177 So. 668.
The evidence shows that the plaintiffs' attorney served a written notice on the defendants demanding that they furnish an instrument acknowledging the termination of the lease. In connection with the claim for attorney's fees there was testimony by Mr. Howard Spann, an attorney of the De Soto Bar, that a fee of $500 would be reasonable.
The lower court awarded the plaintiffs the sum of $500 as to those defendants who were personally served under the provisions of LSA-R.S. 30:102. We can see no error as to this portion of the judgment of the lower court.
For the reasons assigned herein, the judgment of the lower court is affirmed at appellant's cost.
HARDY, J., absent.