Judgment rendered December 18, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,997-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| J. CALHOUN ONE, L.L.C., and CARMEL LAKE MANAGEMENT, L.L.C. | Plaintiffs-Appellees |

versus

| | |
|---|---|
| JEEMS BAYOU PRODUCTION CORP., GUERNSEY PETROLEUM CORP., CHEASAPEAKE LOUISIANA, L.P., and PXP LOUISIANA, L.L.C. | Defendants |

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 73,067

Honorable Amy Burford McCartney, Judge

* * * * *

| | |
|---|---|
| SHUEY SMITH LLC<br>By: John M. Shuey, Jr.<br>    Richard E. Hiller | Counsel for Defendant-Appellant, Jeems Bayou Production Corporation |
| DAVIDSON, SUMMERS, HEARNE, MARTIN & POWELL, LLC<br>By: Grant E. Summers<br>    Wm. Lake Hearne, Jr.<br>    Andrew D. Martin | Counsel for Plaintiffs-Appellees, J. Calhoun One, LLC, and Carmel Lake Management, LLC |

KEVIN W. HAMMOND, APLC                 Counsel for Defendants-
                                       Appellees, Shaffer
                                       Minerals, LLC, Linda
                                       Ann Shaffer Jamar,
                                       David Richard Shaffer
                                       and Donald Alan Shaffer


* * * * *


Before PITMAN, THOMPSON, and HUNTER, JJ.

**PITMAN, C. J.**

Defendant Jeems Bayou Production Corporation ("Jeems Bayou") appeals a judgment denying a peremptory exception of prescription filed in response to a suit filed by Plaintiffs J. Calhoun One, LLC, and Carmel Lake Management, LLC, regarding mineral rights in two tracts of land located in DeSoto Parish. It also appeals a partial summary judgment granted in Plaintiffs' favor regarding the same two tracts. For the following reasons, we affirm the denial of the peremptory exception of prescription, reverse the granting of the partial summary judgment and remand.

## FACTS

On October 5, 2011, Plaintiffs filed a suit in the Forty-Second Judicial District Court, DeSoto Parish, against Jeems Bayou, Southern Exploration, Inc. of Texas, Chesapeake Louisiana, L.P., and PXP Louisiana, LLC (the "Primary Defendants").[1] The petition named several persons as indispensable parties, including Shaffer Minerals, LLC, Ann Shaffer Jamar (Trustee of the James Daniel Shaffer Testamentary Trust), David Richard Shaffer and Donald Alan Shaffer (the "Shaffer heirs"), who are the descendants of persons who, in 1982, originally leased the property that is the subject matter of this suit and who purportedly own an overriding interest in the minerals.

Plaintiffs alleged that they are the owners of the subject property, and the mineral rights in that property located in DeSoto Parish, to wit:

> The East Half of the Southeast Quarter (E ½ SE ¼) of Section 35, Township 13 North, Range 13 West, DeSoto Parish, Louisiana (the "Section 35 Tract"); and

---

[1] Jeems Bayou is the only appellant in this case. Other Primary Defendants are no longer involved in the litigation, and the process by which they were dismissed will not be addressed unless relevant.

The South Half of the Northwest Quarter (S ½ NW ¼) of Section 36, Township 13 North, Range 13 West, DeSoto Parish, Louisiana (the "Section 36 Tract," and with the Section 35 Tract) (collectively the "subject property").

Plaintiffs alleged that on October 11, 1982, the subject property was included with other tracts in a lease from Marshall A. Calhoun, James Malcom Calhoun and Robert Sims Calhoun to Shaffer Oil Company ("the lease"), which was recorded in the records of DeSoto Parish. The lease contains a continuous drilling operations clause that allows for the delay of lease expiration at the end of the primary term if the operations are commenced and then continued, so long as there is no cessation and production is established. The lease was for a three-year primary term ending on October 11, 1985, and for as long thereafter as oil and/or other minerals were produced in paying quantities on the subject property or lands unitized with the subject property.

Paragraph 20 of the lease contains a Pugh clause, which states as follows:

This lease shall terminate at the end of the primary term, or within 60 days following cessation of drilling operation of [sic] such operations are commenced before the end of the primary term and thereafter contined [sic] as provided hereinabove, as to any acreage covered hereby that is not assigned to an oil well or wells on the leased premises, or included in any gas unit formed hereunder capable of producing gas in paying quantities.

The lease was assigned to Jeems Bayou, which subsequently assigned rights in it to others. The Section 35 Tract was included in a Declaration of Unitization ("DU") dated December 9, 1985, by Jeems Bayou, et al., down to a depth of 3,200 feet subsurface. The voluntary unit formed by the DU is produced by the VUA; M A CALHOUN A #8 Well, (the "A-8 Well"),

2

reportedly permitted on December 2, 1985, spud on December 3, 1985, and completed on December 16, 1985.

Plaintiffs alleged that the lease terminated as to the Section 35 Tract prior to the permitting, spudding and completion of the A-8 Well and prior to the DU. Plaintiffs also alleged that, contrary to La. R.S. 30:102, the Primary Defendants failed to notify them of the termination of that lease.

The Section 36 Tract was included in the LAP RA SUR unit for the Buffalo Bayou Field, created by Order No. 1103-A of the Louisiana Commissioner of Conservation dated February 6, 1984. The unit is produced by the LAP RA SUR; M A CALHOUN A #6, ("A-6 Well"), which was reportedly spud on October 1, 1985, and completed on October 9, 1985. The A-6 Well experienced several gaps in production: from August 1, 2000, to March 31, 2001; from November 1, 2001, to May 31, 2002; and from March 1, 2003, to March 31, 2004.

Because of these lapses in production, Plaintiffs alleged that the lease terminated as to the Section 36 Tract for failure to produce in paying quantities and for failure to hold the lease through any other means. They contended that contrary to La. R.S. 30:102, the Primary Defendants failed to notify them of the termination of the lease as to the Section 36 Tract.

Plaintiffs alleged that their attorney sent a certified letter dated September 22, 2010, demanding a release of the lease as to the subject property from the working interest owners who had been made known to Plaintiffs and which included the Primary Defendants.

Jeems Bayou received the letter on September 23, 2010, but Plaintiffs never received a recordable act evidencing the extinction or expiration of

3

their rights in the subject property. Plaintiffs alleged damages as a result of the failure of Jeems Bayou to provide them with the release.

Jeems Bayou filed its answer, affirmative defenses and reconventional demand and stated that the lease was in full force and effect and that Plaintiffs were not entitled to a release as demanded by the September 22, 2010 letter. It claimed that Plaintiffs' claims were prescribed and that it had never received notice of any sort as to the actions or damages Plaintiffs claimed for breach of the lease. It argued that Plaintiffs were estopped from asserting these claims by previous transactions or compromises, equity and waiver, and the claims were extinguished by accord and satisfaction. In reconvention, it sought reimbursement of all well costs, drilling, completion and production costs, construction costs, value of equipment and all other costs associated with the wells.

Discovery took place between 2011 and 2014 and many pleadings were filed, including multiple motions for summary judgment and motions for partial summary judgment. Plaintiffs and Defendants Chesapeake and PXP executed a new lease on the Section 35 and 36 Tracts effective February 23, 2010, and a concursus proceeding was filed. Plaintiffs settled with Chesapeake Louisiana, LP, and PXP Louisiana, LLC, and all actions against them were dismissed with prejudice. Jeems Bayou and Southern Exploration remained as Primary Defendants.

On August 16, 2023, Plaintiffs filed a motion for partial summary judgment and exhibits and argued that the lease terminated as to the Section 35 Tract by the failure of the lessee to timely commence drilling operations on the property prior to the end of the primary term. After the survey, the first activity considered "drilling operations" was on

November 25, 1985, some 45 days after the end of the primary term, when Jeems Bayou began building the A-8 drillsite location. The motion also argued that the lease of the Section 36 Tract terminated pursuant to the lease as a result of the gaps in production that occurred between 2000 and 2004.

On November 16, 2023, Jeems Bayou filed a peremptory exception of prescription and claimed Plaintiffs' claims against it regarding both tracts of land had prescribed.

The trial court held a hearing on Jeems Bayou's peremptory exception of prescription and on Plaintiffs' motion for partial summary judgment. Jeems Bayou argued that Plaintiffs failed to raise their claim for breach of contract within ten years from the date the A-8 Well was completed and that although gaps had occurred in production of the A-6 Well, the fault had been cured and the well had been producing since 2004.

Plaintiffs responded by arguing that they are not suing for breach of contract but that their action was one of ongoing trespass because the lease had terminated and could not be revived. They argued that they had a "real action claim," which was not subject to prescription.

The trial court denied Jeems Bayou's peremptory exception of prescription and found that the ten-year period of prescription found in La. C.C. art. 3499 did not apply to the case at bar and that the provisions of the mineral code, specifically La. R.S. 31:206-209 or La. R.S. 31:102, applied and provided an alternative prescriptive period.

Plaintiffs' motion for partial summary judgment was heard and the trial court concluded that Jeems Bayou did not timely commence operations on the Section 35 Tract (A-8 Well) before the end of the primary term of the lease and, further, as to the Section 36 Tract (A-6 Well) did not continue to

5

conduct operations maintaining the lease after gaps in production. The trial court granted the partial summary judgment as to both tracts.

The judgment was certified as a final judgment and Jeems Bayou suspensively appealed the denial of exceptions of prescription and the partial summary judgments granted in Plaintiffs' favor.

## DISCUSSION

### *Prescription*

Jeems Bayou argues that the trial court erred in denying its peremptory exception of prescription as to claims on both tracts of land because the actions are based in contract or quasi-contract and, thus, are subject to the liberative prescription of ten years found in La. C.C. art. 3449. It characterizes Plaintiffs' petitions of 2011 and 2015 as stating a personal action for breach of the 1982 lease contract for the failure to drill a well before the primary term expired and for allowing gaps in time with no production in paying quantities. It argues that because it was assigned the lease in February 1983, it was vested with an inchoate right to plead prescription of ten years after October 11, 1985. It also claims that any action brought pursuant to La. R.S. 30:102[2] of the Louisiana Mineral Code is also an action in quasi-contract subject to the ten-year liberative prescriptive period.

---

[2] La. R.S. 30:102 concerns notice by lessees to the lessors of termination of a mineral lease and states as follows:
 Within ninety days after the expiration of:
(1) Production under a mineral lease previously maintained by production and
(2) All other rights to maintain that lease, the lessee or his assigns shall notify the lessor or his representative that the lease has terminated, unless such notification is already provided in the lease.

Plaintiffs argue that Jeems Bayou made a fundamental error in assuming their cause of action was for breach of the lease. Instead, Plaintiffs argue that the lease terminated by its own terms and that the efforts of Jeems Bayou in producing from wells on the property after the lease expired could not revive the lease. They contend that the "breach" occurred when the former lessee failed to provide a recordable act evidencing the extinction of the right, citing La. R.S. 31:206.[3] Thus, their claim is based on Jeems Bayou's failure to notify them that the lease had expired, and the time period for bringing suit did not commence until they sent their demand letter and Jeems Bayou failed to provide them with the required notice.

Plaintiffs contend that their affirmative relief for declaration of lease termination did not emanate from La. R.S. 30:102 but, instead, from the notice, response and judicial action requirements of the Mineral Code La. R.S. 31:136, et seq. They argue that there is a viable cause of action for a decree that a lease terminated automatically, and this cause of action has not prescribed, regardless of any possible prescriptive period.

Plaintiffs contend that Jeems Bayou's continued presence on the leased premises after the lease's termination did not trigger a statute of limitations for bringing a claim to recover property. They argue that once a

---

[3] La. R.S. 31:206 states as follows:
A. Except as provided in Paragraph B of this Article, when a mineral right is extinguished by the accrual of prescription of nonuse, expiration of its term, or otherwise, the former owner shall, within thirty days after written demand by the person in whose favor the right has been extinguished or terminated, furnish the person with a recordable act evidencing the extinction or expiration of the right.
B. When a mineral lease is extinguished prior to the expiration of its primary term, the former lessee shall, within ninety days after the extinguishment, record an act evidencing the extinction or expiration of the lease in the official records of all parishes wherein the lease is recorded.

lease automatically terminates, resumption of production could not revive the lease or reestablish it through acquisitive prescription or estoppel.

In *B.A. Kelly Land Co. v. Questar Expl. & Prod. Co*., 47,509 (La. App. 2 Cir. 11/14/12), 106 So. 3d 181, *writ denied*, 13-0331 (La. 4/19/13), 112 So. 3d 223, the court stated, that in the absence of a violation of law or public policy, the mineral lease constitutes the law between the parties and regulates their respective rights and obligations. *Citing* La. R.S. 31:3; *Caskey v. Kelly Oil Co*., 98-1193 (La. 6/29/99), 737 So. 2d 1257, 143 Oil & Gas Rep. 32; *Adams v. JPD Energy Inc*., 45,420 (La. App. 2 Cir. 8/11/10), 46 So. 3d 751, *writ denied*, 10-2052 (La. 11/12/10), 49 So. 3d 892. Mineral leases are construed as leases generally and the provisions of the civil code applicable to ordinary leases are applied to mineral leases. *Caskey v. Kelly Oil Co., supra.* Each provision of a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050.

In *B.A. Kelly Land Co.*, *supra*, the plaintiffs contended that cessation of production was a resolutory condition that automatically terminated the lease. The court stated that a mineral lease terminates at the expiration of the agreed term or upon the occurrence of an express resolutory condition. *Id.*, *citing* La. R.S. 31:133. Further, the court noted that under La. R.S. 31:124, when a mineral lease expires for lack of production under the habendum clause, it terminates automatically without any need for putting in default. *Id.* A judicial ascertainment clause is a "notice and cure" provision that does not apply when the lease terminates automatically for cessation of production. *Id., citing Taylor v. Kimbell*, 219 La. 731, 54 So. 2d 1 (1951);

8

*Sittig v. Dalton*, 195 La. 765, 197 So. 423 (1940); *Logan v. Blaxton*, 71 So.2d 675 (La. App. 2 Cir. 1954), *writ denied* (not reported, 1954).

La. R.S. 31:206, *supra*, concerns obligations of the owner of expired mineral rights to furnish a recordable act evidencing extinction or expiration of right within a limited time period. La. R.S. 31:207 provides the effect of failure to provide the required act within 30 days of receipt of the demand or if the former lessee fails to record the required act within 90 days of its extinguishment prior the expiration of the primary term.

For the foregoing reasons, we affirm the denial of Jeems Bayou's peremptory exception of prescription. The assignment of error is without merit.

### Partial Summary Judgment

### Section 35, A-8 Well

Jeems Bayou argues that it engaged in drilling operations in Section 35 before the expiration of the primary term of the lease and that the Pugh clause was never implemented. It asserts that it employed Marvin Kent, a surveyor, who set a survey stake for a drillsite on the Section 35 tract on October 4, 1985 (seven days before the primary term expired). Jeems Bayou explains its delay in proceeding with operations by claiming that heavy rains began ten days after the survey stake was set while it was in the midst of preparing to conduct the next sequential preparatory activities to clear the drilling location and road access to it. It contends that Stan Smith physically flagged the location within two weeks of October 4, 1985, and met with the landowner, Marshall A. Calhoun, to discuss the road access and location. Calhoun allegedly asked it not to proceed because he felt that any additional rain would soak the location and damage the land or be a danger to his

9

cattle. It argues that the landowner specifically asked for the delay and was untroubled that operations continued after the end of the primary term.

Jeems Bayou also argues that the operations on Section 36 served to maintain the lease as to Section 35 and that the unitization of Section 36 could not serve to "sever" the two tracts of land.

In support of this argument, Jeems Bayou cites *Will-Drill Res., Inc. v. Huggs Inc.*, 32,179 (La. App. 2 Cir. 8/18/99), 738 So. 2d 1196, *writ denied*, 99-2957 (La. 12/17/99), 751 So. 2d 885, in which this court interpreted a Pugh clause and found that there was a distinction between cases where lands affected by the subject lease only comprised a portion of the unit versus cases where the unit is entirely comprised of lands affected by the subject lease. In cases where the unit contains lands affected by a single lease, the mineral lease is not "severed." *Id.*

Jeems Bayou claims that the unit of Section 36 is made up entirely of lands subject to the lease, and the Pugh clause was not implicated. Because that well was completed and began production on October 9, 1985, two days prior to the expiration of the primary term, that production prevented the lease from terminating as to Section 35. It argues that the issue raised by Plaintiffs regarding the Pugh clause ignores the fact that continuous operations occurred on the leased premises and that only 73 of the 80 acres of the Section 35 tract were included in the lease. Because of this, it was necessary for Jeems Bayou to obtain a voluntary unit declaration for the A-8 well in order to obtain production allowable on the same 80 acres as other wells of similar depth under the relevant commission's order.

Plaintiffs argue that the Pugh clause of the lease specifically states that the lease acreage must be either "assigned to an oil well" or "included in

10

a gas unit," and neither of these scenarios was present in this case. The Pugh clause affirmatively requires unitization of gas wells as an additional step for lease preservation based on a gas well, and it prevents the lessee from holding the entire lease at the end of the primary term by continuous operations.

Plaintiffs also argue that Jeems Bayou's action in engaging a surveyor to set a survey stake for a drillsite on October 4, 1985, was not sufficient to trigger the drilling operations requirement to maintain the lease as to that section. They claim that Jeems Bayou's evidence indicates that operations did not commence until 45 days after the primary term ended. They contend that the language of the Pugh clause in this case is mandatory and that Jeems Bayou cannot prove that it took any action which would have extended the primary term of the lease under these circumstances.

*Section 36, A-6 Well*

Jeems Bayou asserts that the partial summary judgment granted as to each separate tract must be considered de novo. Tract 36, A-6 well, suffered several periods without production due to various problems. Jeems Bayou argues that it had the right to attempt to correct problems with this well after each period in which the well was not producing. It denied Plaintffs' argument that it had only one chance to get the well back into production in the first 90 days after production ceased. It also argues that there is no jurisprudence holding that rework operations must successfully restore production in the 90 days following cessation of production; nor does one year without successfully reestablishing production terminate the lease.

Jeems Bayou attached the 2013 deposition of its president, Howard E. Sutton, 120 pages in entirety, in which he discussed the background of

11

DeSoto Parish and his experience drilling of over 300 wells between 1982 and 1985. In the deposition, Sutton discussed the work done to reestablish production during the periods of cessation of operations. Jeems Bayou claims that after production was restored to the A-6 well in April 2004, Plaintiffs continued to receive royalty checks without complaint over the years, including the time the 2010 demand letter was sent.

Plaintiffs argue that a mineral lease generally terminates after the end of its primary term unless production is maintained in paying quantities or unless some other means of maintaining the lease is exercised. La. R.S. 31:124. They contend that the lease at issue in this case contains a "habendum" clause which states that the primary term for this lease is three years from the date and as long thereafter as oil, gas, sulphur or other mineral is produced from the land or from land pooled therewith, or is maintained in force in any other manner provided in the lease. They claim that there is no direct requirement in the clause for production to be "in paying quantities" because that requirement is implied in law of every mineral lease.

Plaintiffs argue that there was indisputedly no production from the A-6 well for several periods in excess of 90 days, even though they admit that they agree with Jeems Bayou to the time periods without production and the steps Jeems Bayou took to restore production by means of reworking operations.

La. C.C.P. art. 966(E) states that a summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the

12

summary judgment does not dispose of the entire case as to that party or parties.

Appellate courts review motions for summary judgment de novo, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791; *Culberson v. Wells Fargo USA Holdings Inc.*, 54,545 (La. App. 2 Cir. 6/29/22), 342 So. 3d 451, *writ denied*, 22-01159 (La. 11/1/22), 349 So. 3d 3, *cert. denied*, —— U.S. ——, 143 S. Ct. 1058, 215 L. Ed. 2d 281 (2023). A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. La. C.C.P. art. 966(A)(3); *Culberson, supra*. The procedure is favored and shall be construed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2).

A motion for summary judgment shall be granted if the motion, memorandum and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success or determines the outcome of the legal dispute. *Culberson*, *supra*. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Id*. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony or weigh evidence. *Id*. The burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). Nevertheless, if the

13

mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action or defense. *Id*. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id*. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967(A). The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories or by further affidavits. *Id*.

When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B). If he does not so respond, summary judgment, if appropriate, shall be rendered against him. *Id*.

After de novo review of the record, we find there are genuine issues of material fact remaining which would impact the final resolution of this case, especially what were the effects of heavy rain prior to commencing drilling in Section 35 and if reworking the well in Section 36 was sufficient to maintain the lease. Because this suit has been ongoing for such a long period of time and covers a time period from 1985 to the present day, we

14

wish to see this case more fully developed at trial.  For these reasons, we reverse the partial summary judgment granted in Plaintiffs' favor.  The assignment of error has merit.

## CONCLUSION

The judgment denying Defendant Jeems Bayou Production Company's peremptory exception of prescription is hereby affirmed.  The judgment granting partial summary judgment in favor of Plaintiffs J. Calhoun One, LLC, and Carmel Lake Management, LLC, is hereby reversed and the matter remanded for further proceedings.  Costs are assessed equally to Jeems Bayou Production Company; J. Calhoun One, LLC; and Carmel Lake Management, LLC.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**