Davis S. WARD et al.

v.

LOUISIANA WILD LIFE AND FISH-
ERIES COMMISSION.

Civ. A. No. 8358, Division "C".

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 3, 1963.

J. Mort Walker, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for plaintiffs.

Harry V. Booth, Shreveport, La., Leo R. Wertheimer, Ellis Irwin, New Orleans, La., Morris Shapiro, Alexandria, La., Jack P. F. Gremillion, Atty. Gen., State of Louisiana, John E. Jackson, Jr., Asst. Atty. Gen., State of Louisiana, Thompson L. Clarke, St. Joseph, La., Harry H. Howard, Wood H. Thompson (Trial Attorney), Monroe, La., Warren M. Simon, New Orleans, La., for defendant.

WEST, District Judge.

On November 4, 1911, by authentic act passed before a Notary Public and two witnesses, grantors, Charles Willis Ward and Edward Avery McIlhenny, did "give, grant, donate, transfer, set over, assign, abandon and deliver to" the grantee,

"The Board of Commissioners for the Protection of Birds, Game and Fish, a body authorized by the laws of the State of Louisiana to control birds, game and fish, of said State as evidenced by the acts of the Legislature thereof" certain lands located in the Parish of Vermillion, Louisiana. This authentic act, hereinafter sometimes referred to as the act of donation, further provided that it was a condition of the donation that the donee secure from the State of Louisiana an act of the Legislature dedicating the lands donated as a game refuge or reserve, and that subject to all other conditions contained therein, the donor would furnish a title to the land in "fee simple" to the State of Louisiana. Among the many other conditions contained in the act of donation was one reserving to the donors "all deposits of minerals, gas, oils, salt and phosphates under the surface of the lands", together with the right to develop same, and it was then provided that "The said donee, and its successors, as the same may be created by the State of Louisiana, and the State of Louisiana shall not sell the lands so donated or devote them to any other purposes than a Refuge or Reserve for wild life. * * *."

On September 15, 1958, the original donors having since died, petitioners herein, David S. Ward, Alma Ward Bristol, Kathryn Chase Rowbotham, Harrison F. Rowbotham, Jr., and Harrison F. Rowbotham, as administrator of the estate of his minor children, Stephanie Chase Rowbotham, Meredith Blake Rowbotham, and Gardner Chase Rowbotham, as the sole heirs of Charles Willis Ward, and Rosemary McIlhenny Osborn, as one of the heirs of Edward Avery McIlhenny, brought this suit against the Louisiana Wild Life and Fisheries Commission, one of the several successors to the Board of Commissioners for the Protection of Birds, Game and Fish, seeking a declaratory judgment under 28 U.S.C.A. § 2201 et seq., declaring that the "defendant has no present rights under the aforesaid instrument of November 4, 1911, and more particularly that the defendant has no right, title, interest or claim of ownership in and to the property of the late Charles Willis Ward and the late Edward Avery McIlhenny, described in said instrument of November 4, 1911." Petitioners' claim is based upon the allegations that both the defendant and the State of Louisiana have failed to comply with the conditions contained in the act of donation, and that hence, title to the land was never conveyed to either the Board of Commissioners for the Protection of Birds, Game and Fish, or to the State of Louisiana. They contend that the instrument in question was not an act of donation, but merely a "commitment to convey the land described therein to the State of Louisiana at some future time when the conditions enumerated therein had been complied with, * * *."

Defendant, in essence, contends that the act of donation was a valid donation and that the lands in question were validly donated thereby to the State of Louisiana or alternatively that they were validly donated to the Board of Commissioners for the Protection of Birds, Game and Fish, which Commission was but an agency of the State of Louisiana, who held said lands solely for the State of Louisiana.

The petitioners who are the heirs of Ward represent collectively a claim to a three-fourths interest in the property involved, and the petitioner who is an heir of McIlhenny represents a claim to a one-twelfth interest in the property. Thus, only ten-twelfths of the alleged ownership in the property is represented by petitioners in this suit. The remaining two-twelfths interest is not represented. The reason for this interest not being represented is quite apparent inasmuch as the possible owners of this two-twelfths interest are citizens of the State of Louisiana, and thus, if joined as plaintiffs in this suit, would destroy the required diversity of citizenship necessary to allow this Court to retain jurisdiction.

On October 30, 1958, the respondent, Louisiana Wild Life and Fisheries Commission, through the Attorney General for the State of Louisiana, filed a motion to dismiss (1) for lack of indispensable parties plaintiff and defendant, (2) for lack of jurisdiction, and (3) for failure to state a claim upon which relief can be granted. It is respondent's contention that the alleged owners of the two-twelfths interest, Mrs. Leila McIlhenny Brown and Mrs. Pauline McIlhenny Simmons, not herein represented, are indispensable parties plaintiff, and that also, the MAWA Petroleum Company, to whom all of the petitioners, together with Mrs. Brown and Mrs. Simmons, executed an oil and gas lease on the property involved, is an indispensable party plaintiff. MAWA is also a citizen of the State of Louisiana. Respondent further contends that one James R. Mary is an indispensable party plaintiff in that he acquired, from the heirs of Charles Ward, an undivided three-sixteenths interest in the oil, gas and mineral rights and mineral substances lying in, upon, and under the land in question. Mr. Mary is also a citizen of the State of Louisiana.

Insofar as the parties defendant are concerned, respondent contends that the proper party defendant is the State of Louisiana rather than the Louisiana Wild Life and Fisheries Commission, which it alleges is only an agency of the State of Louisiana and not amenable to suit. Respondent further alleges that even if it is authorized by the State to be sued, such authorization could only extend to suits filed in Courts of the State of Louisiana, and could not extend to suits filed in Federal Courts. These motions were heard before this Court, as then constituted, on November 12, 1958; and on November 17, 1958, all of defendant's motions to dismiss were denied. Subsequently this case was transferred to another division of this Court, where the motions were again urged, and on September 16, 1959, denied by the Court, as then constituted, without assigning rea-

sons therefor. Thereafter, this case was transferred to this division of the Court where all of these motions of respondent have again been re-urged. Petitioners, in return, have filed and urged a motion to strike all portions of respondent's motions which have previously been heard and decided by the Court. Arguments have been heard by the Court as presently constituted, and extensive briefs have been filed and thoroughly studied. It is now the considered opinion of the Court that respondent's motion to dismiss should be granted for the reasons hereinafter set forth.

██ A United States district judge is most reluctant to reverse or change a ruling or order of another district judge, sitting on the same case, in the same court, and will do so only for the most compelling reasons. However, the power and authority of a judge to overrule a previous decision of a prior judge, sitting on the same case in the same court, is well established. Dictograph Products Company v. Sonotone Corp., 230 F.2d 131 (C.A. 2 1956); In re Walton Hotel Co., 116 F.2d 110 (C.A. 7 1940). The United States Supreme Court has rejected a doctrine of disability at self correction, Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604 (1940), and in this instance, this Court feels compelled to correct what it believes to be an erroneous ruling previously issued herein.

## I. DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO JOIN INDISPENSABLE PARTIES PLAINTIFF.

The alleged owners of a combined ten-twelfths interest in and to the property involved herein have joined as parties plaintiff in the suit. The alleged owners of the remaining two-twelfths interest have not joined as plaintiffs. Defendant contends that the alleged owners of this remaining two-twelfths interest must be joined as indispensable parties plaintiff. Secondly, all of the plaintiffs, together with the alleged owners of the remaining two-twelfths interest, executed an oil

256

and gas lease on the property to the MAWA Petroleum Company, and one James R. Mary acquired from the heirs of Charles Ward an undivided one-fourth of an undivided three-fourths interest in and to all of the oil, gas and mineral rights and mineral substances lying in, upon, or under the land in question. Defendant contends that both MAWA Petroleum Company and James R. Mary are therefore indispensable parties plaintiff to this suit. It is conceded by all parties that Mrs. Leila McIlhenny Brown and Mrs. Pauline McIlhenny Simmons, the alleged owners of the remaining two-twelfths interest in the land itself, are both citizens of Louisiana, and that both MAWA Petroleum Company and James R. Mary are also citizens of the State of Louisiana, and thus, to join any of these parties as plaintiffs would destroy the diversity of citizenship necessary to confer jurisdiction upon this Court. Thus, in this case, the question of indispensability of parties is inextricably bound with the question of jurisdiction. Indispensability of parties is to be determined on practical considerations.

"An indispensable party is one who not only has an interest in the controversy but an interest of such a nature that a final decree can not be made without either affecting that interest or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience." Gaw v. Higham, 267 F.2d 355, 357 (C.A. 6 1959); cert. denied 360 U.S. 933, 79 S.Ct. 1453, 3 L.Ed.2d 1546.

■■ In determining the indispensability of parties, consideration must be given to possible injury to persons not before the Court, the danger of inconsistent decisions, the desire to avoid multiplicity of suits, and the reluctance to enter a decree that will not end the litigation. In the instant case, petitioners, in effect, are seeking the complete nullification or destruction, if you will, of the act dated November 4, 1911, by which the State of Louisiana, either directly or through its Board of Commissioners for the Protection of Birds, Game and Fish, claims to have acquired title to the land in question. In order for the validity and effect of that document to be resolved in favor of either party to this controversy, all parties to the instrument or their successors in interest must be before the Court. The United States Supreme Court in Shields v. Barrow, 17 Howard 130, 15 L.Ed. 158 (1854), said:

"We know of no exception to the rule that an instrument cannot be destroyed totally by a decree unless all parties to it or their successors in interest are before the court."

■ This same rule applies regardless of whether the judgment on the merits is ultimately in favor of or against the absent parties. Young v. Powell, 179 F.2d 147, 152 (C.A. 5 1950).

■ The Court of Appeals for the Fifth Circuit has followed this rule on many occasions. Keegan v. Humble Oil & Refining Co., 155 F.2d 971 (C.A. 5 1946); Calcote v. Texas Pacific Coal & Oil Co., 157 F.2d 216, 167 A.L.R. 413 (C.A. 5 1946), cert. den. 329 U.S. 782, 67 S.Ct. 205, 91 L.Ed. 671; Young v. Powell, 179 F.2d 147 (C.A. 5 1950); Warfield v. Marks, 190 F.2d 178 (C.A. 5 1951), 342 U.S. 887, 72 S.Ct. 176, 96 L. Ed. 665; Baten v. Nona-Fletcher Mineral Co., 198 F.2d 629 (C.A. 5 1952), cert. den. 344 U.S. 864, 73 S.Ct. 104, 97 L.Ed. 670. In support of their contention that the absent parties are not indispensable parties, plaintiffs cite Toerner v. Texas Company, 70 F.2d 239 (C.A. 5 1934); Humphrey v. Stanolind Oil & Gas Co., 232 F.2d 925 (C.A. 5 1956); and Hudson v. Newell, 172 F.2d 848 (C.A. 5 1949). These cases are inapposite to the present controversy. The Toerner case does not consider or deal in any way with the question of indispensable parties. Humphrey considers only the application of Rule 19(b) of the Federal Rules of Civil Procedure, and merely concludes that in that particular case, justice did not require the joining of the non-indispensa-

ble parties sought by defendant to be joined. The Hudson case actually supports the position of the defendant here rather than the position of the plaintiffs. That case held that no cancellation of adverse deeds as prayed for by plaintiff could be decreed by the Court unless every person interested under those deeds were before the Court. In support of its decision the Court quoted from Shields v. Barrow, supra, to the effect that it knew of no exception to the rule that an instrument cannot be totally destroyed by decree unless all parties to it or their successors in interest are before the Court. The plaintiffs in this suit are seeking a judgment decreeing that the defendant has no present rights under the instrument in question. To make that determination, the Court must consider the rights of the absent heirs as well as the rights of those who are presently parties plaintiff. A determination of the rights of the plaintiffs in and to the property in question will necessarily entail a determination of the rights and interests of the absent parties, and therefore, those parties are indispensable parties to this suit. This Court cannot decree the nullity of the instrument by which the State claims title to this land without all parties thereto or their successors in interest being before the Court. Thus it is the opinion of this Court that Mrs. Leila McIlhenny Brown and Mrs. Pauline McIlhenny Simmons, the alleged owners of a two-twelfths interest in and to the property herein involved, are indispensable parties to this suit.

■ As to MAWA Petroleum Company, the Court concludes that it is not an indispensable party. In the act of donation involved, the donors, for the benefit of themselves, their heirs, and assigns, reserved all deposits of minerals, gas, oils, salt and phosphates under the surface of the land donated. Plaintiffs thereafter granted an oil and gas lease on these lands to MAWA Petroleum Company. An oil and gas lease does not constitute ownership of any part of the property itself on which the lease is

granted. Reagan v. Murphy, 235 La. 529, 105 So.2d 210, 214 (1958); Harwood Oil & Mining Company v. Black, 240 La. 641, 124 So.2d 764, 767 (1960).

■■ A mineral lease is a personal right rather than a real right. Reagan v. Murphy, supra. Thus, if plaintiffs granted a mineral lease to MAWA Petroleum Company on lands which they did not own, a personal right of action may have been created in MAWA against the lessors because of the invalidity of the lease. But this right is not so intertwined with the question of ownership of the land itself as to make the lessee an indispensable party. Hence, MAWA Petroleum Company is not an indispensable party to this suit.

■ John R. Mary, on the other hand, acquired a three-sixteenths interest from the heirs of Charles Ward in and to the whole of the oil, gas and mineral rights, and mineral substances, lying in, upon and under the lands in question. This is a mineral servitude. Thus, a mineral servitude being an element of ownership in the real property itself, the owner thereof must of necessity be as interested in the determination of the naked ownership of the land as are the alleged naked owners. LSA–Revised Civil Code (1870) Arts. 490, 492. For example, a mineral servitude prescribes by ten years' non-user. La. Civil Code Arts. 789, 3529, and 3546 (1870); Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207 (1922); Reagan v. Murphy, supra. Thus, if it is now determined that title to this property rests with the State of Louisiana, and that the mineral servitude was granted to Mary by the plaintiffs more than ten years after the mineral reservation by the donors as contained in the original act of donation, and if, during the first ten years following the act of donation of November 4, 1911, the servitude was not used or exercised, then at the time of the sale of the mineral rights to Mary, he received nothing because the mineral rights would have already reverted to the State

of Louisiana because of non-user. On the other hand, if the title never rested in the State of Louisiana, then, of course, the plaintiffs owned the mineral rights all along and consequently a conveyance of them to Mary at any time would have been a valid conveyance of a mineral servitude in this land because the question of prescription would not be involved. Hence, John R. Mary, as the alleged owner of a mineral servitude on this land, may be vitally affected by the outcome of this suit and is therefore an indispensable party plaintiff.

## II. DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO JOIN THE STATE OF LOUISIANA AS AN INDISPENSABLE PARTY DEFENDANT.

 This case is brought against Louisiana Wild Life and Fisheries Commission, one of the successors to the Board of Commissioners for the Protection of Birds, Game and Fish, the donee in the act of donation of November 4, 1911. Defendant contends that it cannot, by law, be sued as it is merely an agency of the State of Louisiana, without the authority to sue or be sued, and that the State of Louisiana itself is the proper party defendant, and that furthermore, even if it can be sued, it can only be sued with consent of the State of Louisiana. Whether or not a commission or agency is a separate and identifiable entity is a question of State law. Louisiana Highway Commission v. Farnsworth, 74 F.2d 910 (C.A. 5 1935). The fact that the legislature chose to call it a corporation cannot alter its characteristics so as to make it something other than what it actually is. Louisiana Land & Exploration Co. v. State Mineral Board, 229 F.2d 5 (C.A. 5 1956). As pointed out in Daigle v. Pan American Production Co., 236 La. 578, 108 So.2d 516 (1959), the character of the agency must also be considered in the light of the relief sought from the Court. For example, in a suit against the Louisiana State Mineral Board, if the relief sought

is the cancellation of a mineral lease, then it is not a suit against the State. But if the question before the Court involves the title to land, then the suit is an action against the State. See also Walmsley v. Pan American Production Co., 144 So.2d 627 (La.App. 4 Cir. 1962).

 The Board of Commissioners for the Protection of Birds, Game and Fish was empowered by Act 273 of 1910 "to accept from any person, firm, or corporation, State or Federal Government, any lands or water suitable for game and fish preserves, to designate and set apart same as game and fish preserves and to provide such rules and regulations, not contrary to law for the conservation of the birds, game and fish found thereon." Apparently, pursuant to this authority, the lands here involved were donated by the act of donation of November 4, 1911. Subsequently, by Act 127 of the Louisiana Legislature of 1912, the Conservation Commission of Louisiana was created as the successor to the Board of Commissioners for the Protection of Birds, Game and Fish. Section 6 of that Act provided "that all moneys, machinery and other property of whatever kind now owned or controlled by the Board of Commissioners for the Protection of Birds, game and fish of the State of Louisiana is hereby declared to be the property of the State of Louisiana, and is hereby transferred to the control of the Conservation Commission of Louisiana". Thus, just as the Louisiana Legislature created the Board of Commissioners for the Protection of Birds, Game and Fish, by Act 278 of 1908, it subsequently abolished that Board by Act 127 of 1912 and in its stead created the Conservation Commission of Louisiana and transferred all property previously belonging to or controlled by the Board of Commissioners to the State of Louisiana. Obviously, if the State had the right to create the Board of Commissioners for the Protection of Birds, Game and Fish, and to grant it the right to acquire property, it also had the right to abolish that Board and transfer its

property to the State of Louisiana. Thus, any right in and to the lands in question acquired by the Board of Commissioners for the Protection of Birds, Game and Fish by the act of November 4, 1911, became vested in the State of Louisiana by virtue of Act 127 of 1912. Even though the Louisiana Legislature has, since 1912, on three different occasions, created successors to the Conservation Commission of Louisiana, the last being in 1952 when the defendant, the Louisiana Wild Life and Fisheries Commission was created, it has never divested itself of the property acquired from the Board of Commissioners for the Protection of Birds, Game and Fish by virtue of Act 127 of 1912. As a matter of fact, it may very well be held, from a reading of the act of donation of November 4, 1911, that the donation was actually made to the State of Louisiana, through the Board of Commissioners for the Protection of Birds, Game and Fish, and that this fact was merely confirmed by the Louisiana Legislature by Act 127 of 1912. Furthermore, as created by Act 57 of the Louisiana Legislature of 1952, the defendant, Louisiana Wild Life and Fisheries Commission, does not have the power to sue or be sued. Consequently, any suit against this defendant would, of necessity, have to be with consent of the State of Louisiana.

 At any rate, in this suit, as filed, the State of Louisiana is the real party in interest. Whether or not a suit is against a state is to be determined not by the mere names of the titular parties, but by the essential nature and effect of the proceedings as it appears from the entire record. The original Board of Commissioners for the Protection of Birds, Game and Fish, as well as the defendant, Louisiana Wild Life and Fisheries Commission, are merely channels through which the State performs part of its necessary governmental function. The result of any judgment or decree in this case would operate against the State of Louisiana. Oklahoma Real Estate Commission v. National Business &

Property Exchange, 229 F.2d 205 (C.A. 10 1955).

Even if it should be held that the State of Louisiana had given consent to suit against the defendant, Louisiana Wild Life and Fisheries Commission, such consent could not be construed as consent to be sued in a Federal Court. As stated in Louisiana Land & Exploration Co. v. State Mineral Board, 229 F.2d 5, 8 (C.A. 5 1956):

"Thus, the fact that the legislature chose to call it a corporation does not alter the Board's characteristics so as to make it something other than what it actually is, a mere agent of the State. Accordingly, it is clear that when the Board sues or is sued, it appears in court as an agent of its principal, the State. We, therefore, are of the opinion that this suit against the State Mineral Board, a mere agency or arm of the State, is in effect, a suit against the State which may not be sued by a citizen of another state under the Eleventh Amendment to the Constitution of the United States." See also Walker v. Felmont Oil Corp., 240 F.2d 912, 913 (C.A. 6 1957).

 Even if the Legislature of Louisiana had consented to a suit being filed against the Louisiana Wild Life and Fisheries Commission as an agency of the State of Louisiana, such consent would be null and void under the provision of Section 35 of Article 3 of the Constitution of the State of Louisiana, LSA, if it consented to such a suit being filed in any other Court than a Court of the State of Louisiana.

Thus it is concluded that the State of Louisiana is an indispensable party defendant to this action, and that in any event, the named defendant, being but an arm or agency of the State, this action cannot be maintained against it in this Court.

In view of the above holdings, it is not necessary for this Court to pass upon the applicability of the Declaratory

Judgment Act, 28 U.S.C.A. § 2201, to these proceedings. Since this Court has concluded that Mrs. Leila McIlhenny Brown, Mrs. Pauline McIlhenny Simmons, and John R. Mary, are indispensable parties plaintiff to this suit, the suit must be dismissed for failure to join indispensable parties plaintiff.

Furthermore, since this Court also concludes that the defendant, Louisiana Wild Life and Fisheries Commission, is but an agency or arm of the State of Louisiana, and that it is not authorized to sue or be sued, and that this is actually a suit against the State of Louisiana, brought by citizens of states other than Louisiana, this suit must be dismissed for lack of jurisdiction. Louisiana Land & Exploration Co. v. State Mineral Board, supra; Eleventh Amendment to the Constitution of the United States; Section 35 of Article 3 of the Constitution of the State of Louisiana (1921).

■■■ And even should this Court have concluded that the defendant, Louisiana Wild Life and Fisheries Commission, is amenable to suit, it would nevertheless hold that in such an event, the State of Louisiana would be an indispensable party defendant. The State of Louisiana contends that it, and not the Louisiana Wild Life and Fisheries Commission, has title to and owns the property in question. The rights of the State of Louisiana are directly and vitally involved, and no valid disposition of this case could be made without the presence of the State of Louisiana in this suit. The fact that to join the above mentioned indispensable parties plaintiff and/or defendant would destroy the jurisdiction of this Court over this case does not thereby render these parties any the less indispensable. London v. Kingsley, 81 F.Supp. 83 (M.D.Pa.1948); Arizona Lead Mines v. Sullivan Mining Co., 3 F.R.D. 135 (N.D.Idaho 1943).

This suit must therefore be dismissed for failure to join indispensable parties and also for lack of jurisdiction.

Decree will be entered accordingly.