314 So.2d 383 (1975)
STATE of Louisiana, Plaintiff-Appellee,
v.
David S. WARD et al., Defendants-Appellants.
No. 4502.
Court of Appeal of Louisiana, Third Circuit.
April 10, 1975.
Rehearing Denied June 18, 1975.
Writ Refused September 25, 1975.
*386 Liskow & Lewis, by William M. Meyers, New Orleans, Broussard, Broussard & Moresi by Marcus A. Broussard, Jr., Abbeville, Jones, Walker, Waechter, Poitevent, Carrere & Denegre by J. Mort Walker, Jr., and Ernest A. Carrere, Jr., New Orleans, for defendants-appellants.
Ernest R. Eldred, Baton Rouge, and J. Nolan Sandoz, Abbeville, and William J. Guste, Jr., Atty. Gen., Robert J. A. Williams, Sp. Asst. Atty. Gen., New Orleans, for plaintiff-appellee.
Before FRUGE, HOOD, and DOMENGEAUX, JJ.
FRUGE, Judge.
This case involves a dispute over ownership of approximately 15,000 acres of land on the coast of Vermilion Bay in Vermilion Parish known as the State Wildlife Refuge. The action was instituted by the State of Louisiana in 1970 as a possessory action against the heirs of Edward Avery McIlhenny and Charles Willis Ward and certain other corporate defendants.[1] The Ward-McIlhenny heirs converted the action into a petitory action by claiming ownership of the tract. After trial on the merits and after studying the voluminous documentary evidence introduced, as well as numerous briefs filed by each side, the district court held the State to be owner of the land and the mineral interests subject to certain reversionary rights in the heirs of Ward and McIlhenny. We amend and affirm.
The focus of dispute is a Notarial Act of Donation executed by Edward Avery McIlhenny and Charles Willis Ward on November 4, 1911. The State claims ownership through this Act of Donation.
The Ward-McIlhenny Group claims that the Act of Donation did not effect a transfer of ownership or, in the alternative, that they are entitled to a rescission of the donation due to the State's failure to fulfill certain specified conditions of the donation.
The issues which must be decided by this court are as follows:
(1) Whether the State is immune from suit by virtue of the doctrine of sovereign immunity;
(2) Whether the Louisiana Wildlife and Fisheries Commission is an indispensable party;
(3) Whether the State is bound by its allegations that it (the State of Louisiana) was donee;

*387 (4) If the State is not so bound, whetherthe State or the Board of Commissioners for the Protection of Birds, Game and Fish was the actual donee;
(5) If the State was the donee, whether it was capable of receiving the donation without legislative acceptance;
(6) Whether the 1911 Act of Donation was a preliminary writing or a final agreement actually transferring ownership;
(7) Whether the donation was subject to a suspensive condition that there be a legislative dedication of the property;
(8) Whether the donation was subject to certain resolutory conditions and whether the State has fulfilled such conditions;
(9) If the State has not fulfilled certain resolutory conditions, whether liberative prescription of 5 years has run which would prevent suit for rescission of the donation;
(10) Whether the owners of the mineral lease are bound by the Act of Donation even though the act was not recorded in the Donation Records of Vermilion Parish;
(11) Whether the State acquired title through 10 and 30-year acquisitive and liberative prescription.
The court notes that this suit is the culmination of many years of dispute between the parties involving several legislative acts and a prior lawsuit, none of which has determined this matter.[2]
Furthermore, the Ward-McIlhenny heirs have agreed that in the event they should be successful in this suit they would be willing to give the State a year to accept the donation, reserving unto themselves the minerals.
The trial court noted that there is oil and gas production surrounding the tract though the tract itself has never been developed for minerals. All of the parties believe that these minerals are worth millions of dollars.
THE ACT OF DONATION
The 1911 Act of Donation around which this case centers is made in proper form for a donation; it was made before a notary and two witnesses. Civil Code art. 1536. The donors are Ward (¾ interest) and McIlhenny (¼ interest). The recited donee is the Board of Commissioners for the Protection of Birds, Game and Fish which was an incorporated agency of the State of Louisiana. Acceptance was made on behalf of the Board by Frank M. Miller, its president. In the Act the donors stated that they "give, grant, donate, transfer, set over, assign, abandon and deliver" the land to the Board of Commissioners. The Act then goes on to describe the land being donated.
Following this description the Act of Donation contains a section concerning a portion of the tract about which there was some question as to the donors' title. The question arose because of a discrepancy between the official survey made by the United States Land Office and a later private one made by the Orange Land Company. Because of the discrepancy there was some question as to whether certain lands bordering the donated tract were dry lands or were under the waters of Vermilion Bay. The donors gave the State whatever interest they might have in these *388 "doubtful lands," but specifically refused to warrant title to those sections. In the next sentence they further provided:
"It is, however, to be a condition of the said donation that the donee shall secure from the State of Louisiana an act of the Legislature dedicating the said lands hereinabove described as a Game Refuge or Reserve, and to form part of the Refuge or Reserve herein to be donated, there being no legal obstacle to the legislative dedication and creation of said Refuge or Reserve."
After taking care of the doubtful lands, the Act has a set of conditions. These conditions are primarily designed to specify the manner in which the reserve or refuge is to be maintained by the donee. We will discuss them in greater detail later in this opinion.
SOVEREIGN IMMUNITY
The trial court overruled the exception filed by the State based on sovereign immunity. The basis of the holding was that the State Legislature waived this immunity by adopting Resolution 455 of 1971.
The resolution was passed after an aborted attempt to compromise, by legislative act, the differences in this suit. Rejecting the proposed compromise, the Legislature passed the following resolution:
"Therefore, Be It Resolved by the House of Representatives of the Legislature of Louisiana, the Senate thereof concurring herein, that the Legislature hereby expresses its intent that the entire controversy over the Louisiana State Wild Life and Game Refuge in Vermilion Parish, commonly known as the Ward-McIlhenny Refuge, be carried to a conclusion by the final decision of court and that there be no compromise of any issue involved in the controversy."
This resolution satisfies the requirements of Article 3, Section 35, of the 1921 Constitution and, in our opinion, waived any right of sovereign immunity which the State may have had.
PARTIES
The State contends that the trial court erred in overruling its exception of nonjoinder of an indispensable party. The State contends that the Wildlife and Fisheries Commission is an indispensable party since it is the successor to the Board of Commissioners for the Protection of Birds, Fish and Game which the State contends was donee of the disputed tract. Whether the Board of Commissioners or the State was the donee, we find no merit in the State's exception. Act 127, of 1912 established the Conservation Commission of Louisiana. The Conservation Commission replaced the Board of Commissioners for the protection of Birds, Fish and Game which was, in effect, abolished. Section 6 of that Act provided that all property owned by the Board of Commissioners for the Protection of Birds, Fish and Game "is hereby declared to be property of the State of Louisiana, and is hereby transferred to the control of the Conservation Commission of Louisiana . . ." (Emphasis added.) Thus, whether the State or the Board of Commissioners was donee in the 1911 Act of Donation, the State was owner of the property at the time of trial.
Although the tract was at the time of trial managed by the Louisiana Wildlife and Fisheries Commission, that Commission has no claim of ownership to the disputed tract. Indispensable parties are defined in Article 641 of the Code of Civil Procedure as parties
"whose interests in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action."
Since the Louisiana Wildlife and Fisheries Commission has no claim of ownership to *389 the tract, we are of the opinion that a complete and equitable adjudication of ownership can be made without making the Commission a party. We have held that an owner of a servitude is not an indispensable party to an expropriation proceeding, Michigan Wisconsin Pipe Line Company v. Fruge, 210 So.2d 375 (La.App. 3d Cir. 1968), and the Supreme Court has held that a servitude owner and a mortgage holder are not even necessary parties to a petitory action. Jackson v. Gulf Refining Co., 201 La. 721, 10 So.2d 593 (1943); Fontenot v. Sun Oil Company, 257 La. 642, 243 So.2d 783 (1971). We do not think the interest of the Wildlife and Fisheries Commission, which manages the Refuge, will be affected any more than that of a servitude or mortgage holder. We conclude that the trial court properly overruled the exception.
THE STATE'S JUDICIAL CONFESSION
The trial court held that the State was not bound by its judicial allegations that it was the donee since the allegations are a conclusion of law. The Ward-McIlhenny Group contends that the allegations are conclusions of fact by which the State is bound under Civil Code article 2291. That article provides as follows:
"The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
It amounts to full proof against him who made it.
It cannot be divided against him.
It cannot be revoked, unless it be proved to have been made through an error of fact.
It cannot be revoked on a pretense of an error in law."
Louisiana jurisprudence has followed the rule of Article 2291 in holding that on factual matters a party is bound by his pleadings and stipulations. Eanes v. McKnight, 262 La. 915, 265 So.2d 220 (1972); Jackson v. Gulf Ins. Co., 250 La. 819, 199 So.2d 886 (1967); Sanderson v. Frost, 198 La. 295, 3 So.2d 626 (1941).
However, where the pleading or stipulation involves a question of law rather than fact, it is given no effect since it is the function of the courts to construe the law. New Orleans Fire Fighters Ass'n Local 632 v. City of New Orleans, 260 So. 2d 779, 788 (La.App. 4th Cir. 1972), affirmed 263 La. 649, 269 So.2d 194 (1972); City of New Orleans v. Board of Commissioners, 148 So.2d 782, 785 (La.App. 4th Cir. 1962); Scurria v. Russo, 134 So.2d 679 (La.App. 4th Cir. 1961).
The pleading made by the State may be summarized as follows. In paragraph 3 of its original petition the State alleged:
"Although the Act of Donation aforesaid was made in the name of the Board of Commissioners for the Protection of Birds, Fish and Game, said donation actually accrued and inured to the State of Louisiana, as donee, particularly because the Board aforesaid was a mere agency of the State."
In paragraph 3 of its amended and supplemental petition the State alleged:
"By virtue of Act No. 273 of the Louisiana Legislature for the year 1910, the same being made a part hereof as if written herein in extenso, the act of donation. . . was accepted by and or for the State of Louisiana."
In paragraph 2 of its answer to the petitory action the State asserted that it acquired title to and possession of the donated lands through the Act of Donation.
*390 This contention is repeated in the State's pretrial brief filed in the lower court.[3]
The Ward-McIlhenny Group contends that the State has alleged that it was the donee and is bound by these allegations under Article 2291. The State contends that it has never limited itself by saying that the donation was made to the State as donee.
We think this contention by the State is correct. Nowhere in its pleadings does the State contend that it accepted as donee. The claim is that the donation inured to the benefit of the State or that the acceptance by the Board of Commissioners was an acceptance by or for the State.
These claims appear to have been a conclusion made by the State's counsel based on the relationship between the Board of Commissioners and the State since our jurisprudence holds that the State includes administrative departments and agencies within the State government. Long v. Northeast Soil Conservation District of Louisiana, 72 So.2d 543, 545 (La. App. 2nd Cir. 1954).
We are convinced that in stating that the donation was accepted by or for the State, State's counsel was stating a legal conclusion that a donation accepted by the Board of Commissioners or any other State agency ultimately accrues to the State.
The fact that Act 273 of 1910 was incorporated into the pleadings supports this conclusion. In that Act the Board of Commissioners was given the power "to accept from any person, firm, corporation, State or Federal Government, any lands or waters suitable for game and fish preserves. . ." It is clear from the reference to this Act that the State was not pleading that it in its sovereign capacity was donee. The reference shows that the State was alleging that, as a matter of law, a donation to the Board of Commissioners ultimately accrues to the benefit of the State.
This conclusion is a conclusion of law which is not binding on this court.
Furthermore, where a deed or instrument is attached to the pleadings "the statements in the document control and correct the allegations in the petition." Kirtman v. Upkins, 17 La.App. 96, 135 So. 612, 613 (1st Cir. 1931); Ruiz v. American Trading Co. of New Orleans, 167 La. 28, 118 So. 597 (1928); Dillard University v. Local V. 1419, Int. Longshoremen, 144 So. 2d 710 (La.App. 4th Cir. 1962); Logan v. Blaxton, 71 So.2d 675 (La.App. 2nd Cir. 1954); General Contract Purchase Corp. v. Doyle, 56 So.2d 432 (La.App.Orl.1952).
In its original petition the State attached and incorporated by reference a certified copy of the Act of Donation. In all subsequent pleadings the State referred back to the Act of Donation. Thus, even if the State had alleged as fact that it was donee, those allegations would be controlled by any contrary statements in the Act itself.
From a study of the Act of Donation we think it is clear that the donation was made to the Board of Commissioners for the Protection of Birds, Fish and Game. The named donee in the Act is the Board of Commissioners. Throughout the Act the Board of Commissioners is referred to as the donee. Furthermore, in several places the Act makes a clear differentiation between the "donee" and "the State of Louisiana."
From this and from the fact that the president of the Board of Commissioners *391 accepted the donation in compliance with the requirements of the Civil Code, we conclude that the Board of Commissioners was the intended donee under the Act of Donation.
Thus, assuming arguendo that the state had judicially confessed that it was donee, these allegations are contradicted by the Act of Donation itself which was attached to the State's pleadings.
We conclude that the trial court was correct in finding that the State was not bound by any pleadings that it was donee and that the Board of Commissioners for the Protection of Birds, Fish and Game was the actual donee.
Since it is clear that under Act 273 of 1910 the Board of Commissioners had the authority to accept donations in its behalf, and that under Act 265 of 1910[4] the Board had the authority and power to hold immovable property, we find that there was a valid acceptance of the donation. All questions concerning the validity of acceptance if the State had been donee are therefore pretermitted.
PRELIMINARY WRITING OR ACTUAL TRANSFER
The Ward-McIlhenny Group contends that the trial court erred in finding that in 1911 Act of Donation effected a transfer of the property and was not merely a preliminary writing to such a transfer. We find no merit in this contention.
The Ward-McIlhenny contention is based on language in the Act which refers to the land "herein to be donated" and on a condition of the donation wherein it is stated that "the donors will furnish a title. . . ." They contend that the Act of Donation was to be followed by a "Deed of Gift" which was never accomplished. We do not think this to be the case. Although in a few places in the Act future tense is used, we think it clear from a reading of the entire act that a present donation was intended.
The donation was made in authentic form before a notary and two witnesses. Civil Code art. 2234. Additionally, the entire tenor of the Act denotes a present intention on the part of the donors to transfer ownership. The Act is entitled "Act of Donation." The language of transfer is unmistakable: "[The donors] do by these presents, give, grant, donate, transfer, set over, assign, abandon and deliver to. . . ." In short, we find the donors' present intention to donate to be manifest.
THE CONDITIONS OF THE DONATION
The Ward-McIlhenny Group argues vigorously that the 1911 donation was subject to a suspensive condition which prevented the donation from ever taking place. The trial court ruled that the Act of Donation contained no suspensive conditions.
The Ward-McIlhenny Group relies primarily on the following language found in the Act of Donation:
"It is, however, to be a condition of the said donation that the donee shall secure from the State of Louisiana an act of *392 the Legislature dedicating the said lands hereinabove described as a Game Refuge or Reserve, and to form part of the Refuge or Reserve herein to be donated, there being no legal obstacle to the legislative dedication and creation of said Refuge or Reserve."
The Ward-McIlhenny Group contends that since there has never been a legislative dedication of any of the lands involved in the dispute, no transfer has been effected.
The Ward-McIlhenny argument is based on the premises that the condition requires an Act of the Legislature dedicating all of the donated lands and that the condition suspends the transfer of ownership.
The trial court held that the condition applied to the whole tract but that it was resolutory rather than suspensive. The court went on to hold that any right in the Ward and McIlhenny heirs to sue for dissolution on account of nonfulfillment of the condition had prescribed.
From a reading of the Act we do not agree that the above condition required an Act of Dedication of the entire tract donated.
The condition is found in a portion of the Act which is concerned with certain "doubtful" lands. The donors were not certain whether they owned certain portions of the tract bordering on Vermilion Bay because of a discrepancy between the official survey of the area and a later private one made by the Orange Land Company. After describing the discrepancy in the Act the donors state that it was not known whether the doubtful lands were located in Vermilion Bay (thus being insusceptible of private ownership) or were on shore. The donors then specifically refused to warrant title to these lands because of this discrepancy. The sentence requiring legislative dedication of "said lands" immediately follows this statement of non-warranty.
From the placement in the Act and from the language used, we think it is clear that the condition requiring legislative dedication of "said lands" refers only to the doubtful lands and was not a requirement that the entire tract be dedicated by the Legislature as a game refuge or reserve. We note especially that the condition requires "an act of the Legislature dedicating the said lands hereinabove described as a Game Refuge or Reserve, and to form part of the Refuge or Reserve herein to be donated, . . . ." (Emphasis added.) If the donors' intent had been that the entire tract be dedicated by the Legislature they would not have placed the condition in a section dealing with doubtful lands and they certainly would not have included the italicized clause, supra. The italicized clause shows clearly that the donors intended that only the doubtful lands be dedicated. We disagree, therefore, with the trial court's finding that the condition required dedication of the entire tract.
We now face the question of whether the failure of the State to legislatively dedicate the "doubtful lands" suspended the effect of the Act of Donation.
At trial the State introduced evidence which shows that most of the doubtful lands were in fact part of Vermilion Bay. A few of the doubtful sections do exist on shore. However, all of these sections had been patented out to Thomas Hasam prior to the patents issued to Jabez B. Watkins who is the donors' author-in-title. Thus, at the time of donation Ward and McIlhenny had no title to those doubtful lands which did exist on shore and, as to those lands, no title was passed to the State by the Act of Donation.
The donors' intent in requiring legislative dedication obviously was to insure that the "doubtful lands" were included in the Refuge if they were, in fact, on shore. The legislative dedication provision was necessary to insure this result if the State, rather than the donors, had title to these doubtful lands. Of course, the State did *393 own the doubtful portions which were under the waters of Vermilion Bay. But since these doubtful lands under Vermilion Bay could in no way prevent the Refuge from extending to the shore line we do not believe the donors intended there to be any dedication of the doubtful lands under Vermilion Bay.
We conclude therefore that there was no requirement that the State legislatively dedicate those doubtful lands which existed only in the waters of Vermilion Bay.
Neither do we think there was any requirement that the State dedicate those doubtful lands which did exist on shore but which had been patented out by the State to Thomas Hasam. In the last clause of the condition the donors stated: "there being no legal obstacle to the legislative dedication and creation of said Refuge or Reserve." Since the doubtful lands which did exist had been patented out, there was a "legal obstacle" to legislative dedication since only an owner can dedicate. See, e. g., Anderson v. Thomas, 166 La. 512, 117 So. 573 (1928), where dedication is defined to be "an appropriation of land to some public use made by the owner. . ."
We do not think the donors intended to require legislative dedication of land to which the State did not have title.
We hold that because most of the doubtful land did not exist on shore, and because the State did not have title as to the remaining land which did exist, that the State was relieved of its obligation of legislatively dedicating those doubtful lands.
OTHER CONDITIONS OF THE DONATION
The Act of Donation ends with a list of 16 conditions which control the gift. The conditions impose on the donee and its successors certain charges which must be fulfilled. These conditions make the donation an onerous donation under Article 1523 of the Civil Code, Article 1559 states that a donation inter vivos may be revoked or dissolved for the nonperformance of the conditions imposed on the donee. Article 1566 states that "if the conditions be potestative, that is, if the donee is obliged to perform or prevent them, their non-fulfillment does not, of right, operate a dissolution of the donation; it must be sued for and decreed judicially."
These resolutory conditions imposed by Ward and McIlhenny deal mainly with the manner in which the refuge or reserve shall be operated. Certain of the other conditions reserve to the donors the right to construct canals and ship channels through the tract.
The trial court found that the State had substantially complied with the conditions and we agree.
Condition 2 requires that the refuge or reserve shall be maintained perpetually as an absolute game and bird refuge. Under condition 5 the State is required to make it a criminal offense to enter the refuge and destroy game or fish without permission. Condition 6 requires that the donee survey and mark the boundaries of the refuge. Condition 7 requires that the donee shall properly police the reserve. Condition 8 requires the donee to appoint an efficient game warden and to maintain an adequate food supply for birds and game. Condition 9 requires that enemies of wildlife shall be destroyed. Condition 10 prohibits sale of the refuge and prohibits use of the land for anything other than a refuge or reserve. Condition 11 requires that the donee or State shall, if requested by the donors or their heirs, appoint and deputize wardens to protect wildlife on any private reserves established by the donors. Condition 13 requires the State to prohibit seining for fish within one mile of the shore of the refuge. Condition 14 requires that the donee declare inland water of the refuge to be an oyster reserve. Condition 15 provides that title shall revert to the donors *394 or their heirs should the conditions not be met. Condition 16 requires that the wardens appointed for the reserve be competent and not be appointed as a reward for partisan political services.
Condition 12 is a reservation of mineral interests in favor of the donors, their heirs or assigns.
As we noted above, the trial court found substantial compliance with all of these conditions.
The Ward-McIlhenny Group contends that prior to 1953 no serious attempt was made to comply with these conditions.
After a study of the record which includes the testimony of many employees of the Louisiana Wildlife and Fisheries Commission and other conservationists, we find no error in the district court's conclusion that there was adequate compliance. The evidence introduced establishes that the refuge was surveyed in 1913 by Frank T. Payne and that 50 "no trespassing" signs were placed around the refuge at that time. The refuge was patrolled and in 1929 or 1930 a camp was built to house the wardens who patrolled the area.
The trial court found that some seining within a mile of the refuge took place between 1919 and 1921 and that this provision was difficult to enforce.
There was also some indication that some of the wardens may have been appointed as a political reward. In this connection the donors reserved the right to challenge the appointment of any warden and this provision was never exercised.
The evidence establishes that the tract has been run as a game refuge since the Act of Donation was passed. It is true that the conditions have been more strictly adhered to after 1953 when more money was made available for the management of the reserve. However, prior to 1953 there was no complaint by the donors or their heirs that the conditions of the donation were not being fulfilled.
We believe the record shows adequate compliance with the conditions. The few instances of noncompliance were not such as would allow dissolution. We hold that the Ward-McIlhenny heirs are not entitled to a dissolution of the donation.
PRESCRIPTION
The State has answered the appeal in this case asserting various pleas of liberative and acquisitive prescription.
Since we hold that the Board of Commissioners acquired title to the property through the Act of Donation there is no need to discuss the pleas of acquisitive prescription.
With regard to the pleas of liberative prescription, the State contends that the time for filing suit for dissolution of the donation has prescribed. We find this contention to be without merit.
Since we have found that the State was under no obligation to legislatively dedicate all or a portion of the refuge, prescription is not at issue with regard to that condition. As to the other conditions we have found adequate compliance by the State. There being adequate compliance, the prescriptive period within which suit must be brought for failure to comply with the conditions of the donation has not yet begun to run.
THE MINERAL RESERVATION
We also hold that the mineral servitude reserved by the donors in the Act of Donation has prescribed due to 10 years prescription of non-use. Frost-Johnson Lumber Co. v. Sallings' Heirs, 150 La. 756, 91 So. 207 (1922). There is no contention in the pleadings nor proof in the record of any mineral activity on the tract.
RECORDATION
The corporate appellants within the Ward-McIlhenny Group argue that neither the Act of Donation nor an acceptance *395 thereof was properly recorded and that the Act is not binding on them. The State has admitted that the Act of Donation was not recorded in the Donation Book of Vermilion Parish, although it was recorded in that parish's Conveyance Records. The basis of the corporate appellants' agreement is Civil Code Article 1554 which provides as follows:
"When the donation comprehends property that may legally be mortgaged, the act of donation, as well as the act of acceptance, whether the acceptance be made by the same or a separate act, must be registered, within the time prescribed for the registry of mortgages, in a separate book kept for that purpose by the register of mortgages, which book shall be open to the inspection of all parties requiring it."
The State argues that Revised Statute 9:2371 controls the present factual situation. This statute was enacted by Act 22 of 1962, and provided as follows:
"2371.A. No donation inter vivos of property which may be legally mortgaged shall be effective as to donees or to third persons unless and until the act of donation, as well as the acceptance thereof, is registered in the office of the parish register or recorder of mortgages; provided, however, that notwithstanding the provisions of any other law to the contrary, recordation in the special book required to be maintained by the register or recorder of mortgages in accordance with the provisions of Article 1554 and Article 3388 of the Civil Code or any other law, or recordation in the parish conveyance records, or both shall constitute registration of such donations and acceptances heretofore or hereafter made and shall be effective as to third parties. The provisions of this Section are remedial and shall have retroactive effect but shall not operate to the impairment of existing contracts or judgments."
This statute was amended in 1964 to provide as follows:
"A. Donations of immovables or of rights thereto and of the acts of acceptance thereof shall be recorded in accordance with the requirements of Article 1554 of the Civil Code or in the conveyance records of the parish where the immovable is situated.
B. Failure to have complied with the recordation provisions of Act 22 of 1962 shall not affect the validity of any donations inter vivos as between the parties thereto; provided that any person claiming to be adversely affected by this Sub-section has six months from the effective date of this Act to assert his claim."
Under the above provision, the recordation in the Conveyance Records for the Parish of Vermilion was effective as to the corporate appellants. The 1964 amendment gave them six months from the effective date of the amendment to assert their claim, i.e., to assert their rights under the leases acquired from the heirs of Ward and McIlhenny. On appeal the State has asserted a plea of peremption under the above statute, which we find to be well-founded. Therefore, we hold that the corporate appellants have lost their right to assert their claim.
CONCLUSION
The judgment of the trial court is correct in all respects except one. The trial court held that the rights of the Ward-McIlhenny heirs to revoke the Act of Donation because of the failure to secure an Act of Dedication from the state legislature had prescribed. We have found that the State was never under any obligation to so dedicate.
Therefore the judgment of the trial court is amended so that the last paragraph on page 10 of the trial court's judgment now reads: It is further ordered, adjudged *396 and decreed that no act of dedication is required by the Act of Donation.
In all other respects the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendants-appellants.
Amended and affirmed.
PER CURIAM.
In its application for rehearing the Ward-McIlhenny Group contends, among other things, that our original opinion is in error in finding that most of the "doubtful sections" do not exist on land. Appellants cite in particular a 1959 survey made by R. B. St. Marie on behalf of the Wildlife & Fisheries Commission which, if correct, shows that the official governmental survey is incorrect.
Appellants contend that the official government survey made by Rightor and McCollom in 1838 erroneously ascertained the section boundaries in the area of the donated property, and that if these boundaries were correctly ascertained the "doubtful sections" would indeed exist on shore. They contend that since these doubtful sections were never legislatively dedicated the donation has never been effectuated.
The law is well settled that: "A government survey creates, not merely identifies, the township sections and boundaries thereof." (Emphasis in original.) Carter v. Moore, 258 La. 921, 248 So.2d 813 (1971) citing, Cox v. Hart, 260 U.S. 427, 43 S.Ct. 154, 67 L.Ed. 332 (1922); United States v. Morrison, 240 U.S. 192, 36 S.Ct. 326, 60 L.Ed. 599 (1916); Horne v. Smith, 159 U.S. 40, 15 S.Ct. 988, 40 L.Ed. 68 (1895); State v. Aucoin, 206 La. 787, 20 So.2d 136 (1944); Union Producing Company v. Placid Oil Co., 178 So.2d 392 (La.App. 1st Cir. 1965), cert. denied 248 La. 447, 179 So.2d 432 (1965).
Even if the governmental survey is incorrect, it nevertheless creates the township sections and boundaries. It is clear therefore that the doubtful sections do not exist on shore since they have not been there created in the official government survey.
As the doubtful lands do not exist on shore there was no need for a legislative dedication.
However, assuming arguendo that the doubtful lands do exist on shore we would find that the condition requiring legislative dedication is a resolutory condition and that the prescriptive period within which the nonfulfillment of the condition must be raised has run. In this regard the following Civil Code articles are pertinent:
"Art. 1565: When an eventual condition, which suspends the execution of a donation, can no longer be accomplished, as if the donation was to be executed on the arrival of a certain vessel, and the vessel is lost, the donation is dissolved of right.
"Art. 1566: But if the conditions be potestative, that is, if the donee is obliged to perform or prevent them, their nonfulfillment does not, of right, operate a dissolution of the donation; it must be sued for and decreed judicially.
"Art. 1567: An action of revocation or recission of a donation on account of the non-execution of the conditions imposed on the donee, is subject only to the usual prescription, which runs only from the day that the donee ceased to fulfill his obligations."
Article 1566 defines a potestative condition as one which "the donee is required to perform or prevent." The condition in the donation concerning legislative dedication requires that "... the donee shall secure ..." the dedication. Thus this is a condition which the donee is obliged to perform or prevent and under Article 1566 dissolution of the donation must be sued for within the prescriptive period allowed in Article 1567. That prescriptive *397 period is five years. DiMattia v. DiMattia, 282 So.2d 554 (La.App. 1st Cir. 1973). It is clear that suit to dissolve the donation was not brought prior to the running of the prescriptive period in this case.
The application for rehearing is denied.
NOTES
[1] The other defendants claim certain mineral interests in the land by virtue of mineral leases and interests granted by the heirs of Ward and McIlhenny. Lake Fearman Corporation and Callery-Indian Point, Inc., claim to be mineral lessees. Callery-Indian Point, Inc., and Vermilion Indian Point Co., Inc., claim to be owners of fractional mineral interests.
[2] The prior lawsuit was filed in federal court by the non-Louisiana heirs of Ward and McIlhenny against the Louisiana Wildlife and Fisheries Commission. The court in that suit held that the Louisiana heirs of Ward and McIlhenny were indispensable parties. The suit was therefore dismissed since joinder of the Louisiana heirs would destroy the diversity jurisdiction of the federal court. Ward v. Louisiana Wildlife & Fisheries Commission, 224 F.Supp. 252 (E.D.La.1963).
[3] These pleadings are in accord with those made by the State in a prior federal suit between the parties. Ward v. Louisiana Wildlife & Fisheries Commission, 224 F.Supp. 252 (E.D.La.1963). Under D'Amico v. Canizaro, 226 So.2d 547 (La.App. 4th Cir. 1967), and cases cited therein, allegations made in a prior suit are not controlling as judicial admissions in a later action.
[4] Act 265 of 1910 created the Board of Commissioners for the Protection of Birds, Fish and Game. Section 2 of the Act provided in part as follows:

"Section 2. Be it further enacted, etc., That the Board of Commissioners for the Protection of Birds, Game and Fish is hereby constituted a department of the State Government for the purpose of protection, management and conservation of the oyster fields and water bottoms, to protect the birds, game, fish, shrimp, fur-bearing animals and diamond-back terrapin of the State and to see that all laws relative thereto are enforced; and as such, is hereby created a body politic or political corporation invested with all the powers inherent in such corporations. It shall have the authority to sue and be sued. . . Said Board shall have authority to buy, sell, and hold, lease and hypothecate property real, personal and mixed; to make and execute all contracts, and generally to do and perform all things necessary to carry out the objects of this Act subject to all limitations and duties herein provided."